**CLEVELAND BOARD OF EDUCATION,**

v.

**R.J. STICKLE INTERNATIONAL et al.; Motorists Mutual Insurance Co. et al., Appellants; CNA Insurance Co., Appellee.**

[Cite as *Cleveland Bd. of Edn. v. R.J. Stickle Internatl.* (1991), 76 Ohio App.3d 432.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 58979, 59054, 59083.

Decided Oct. 28, 1991.

*Martin T. Franey,* for appellant, Motorists Mutual Insurance Co.

*Frederick P. Vergon,* for appellant, Midwestern Indemnity Co.

*Julius R. Gerlack,* for appellant, Commercial Union Insurance Co.

*James Gowan,* for appellee, CNA Insurance Co.

PATRICIA A. BLACKMON, Judge.

Appellants, Motorist Mutual Insurance Company, Midwestern Indemnity Company, and Commercial Union Insurance Company, timely appeal the outcome of a declaratory judgment action, wherein the trial court was asked to apportion payment of damages among several liability insurance carriers. Since we believe the arguments of the appellants are meritorious, we reverse.

The underlying case involved the construction of East High School for the Cleveland Board of Education. In 1973, the Norton Brothers Company agreed to perform as the roofing subcontractor on the project. The construction of East High School was completed in 1974. However, the roof of the high school began to leak at the beginning of 1975 and damage from those leaks continued unabated until the end of 1988.

During the period from 1975 to the end of 1988, the Norton Brothers Company was insured by five different general liability insurance carriers. With the exception of 1978, 1979, and 1980, the Norton Brothers Company carried both primary and excess liability coverage. During 1978, 1979, and 1980, there was no excess liability coverage.

The Cleveland Board of Education eventually initiated litigation against the general contractor Carbone Construction Company for the alleged negligent design, installation, and construction of East High School. Carbone Construction Company filed a third-party complaint against the Norton Brothers Company, as well as other subcontractors. The third-party complaint specifically requested indemnity and contribution from Norton Brothers for the claims by the Cleveland Board of Education against Carbone Construction Company that alleged negligent design, installation and construction of the roofing at East High School.

Prior to trial of the matter, the case was settled against all defendants in the amount of $2,000,000. It was stipulated in writing that a $300,000 contribution to the settlement amount would be paid by various liability

insurance carriers on behalf of the Norton Brothers Company. However, a dispute arose as to the amount each of these insurance companies should contribute.

A stipulation was entered into that the various insurance companies would join in a declaratory judgment proceeding whereby the trial court would determine the amounts to be paid by the respective liability carriers. There were also some supplemental stipulations: first, that the $300,000 settlement figure on behalf of Norton Brothers Company was reasonable; second, that the settlement represented resulting damages and not damages to the roof itself; third, that the resulting damage continued unabated from 1975 through December 1988; and, finally, that Norton Brothers Company had no exposure to itself and all damages attributable to Norton Brothers would be fully covered by all primary and excess policies.

After thorough briefing of the legal issues by the parties and an oral hearing, the trial court entered a judgment requiring contribution from all five insurance carriers as follows:

| | |
|---|---|
| Buckeye Union Insurance Company | $ 25,000.00 |
| Midwestern Indemnity Company | 148,076.92 |
| Commercial Union Insurance Co. | 68,750.00 |
| Motorists Mutual Insurance Co. | 42,307.69 |
| CNA | 15,865.39 |
| TOTAL: | $300,000.00 |

Because of the interrelationship between the appellants' two assignments of error, they will be addressed together. They state:

"I. The trial court erred as a matter of law by apportioning liability coverage for resulting damage among all insurance carriers issuing policies during the time of resulting damage.

"II. The trial court's decision apportioning coverage among all insurance carriers issuing policies during the time of resulting damage is against the manifest weight of the evidence."

Even though the decision by the trial court is being reversed, we are compelled at the outset to laud the efforts of the trial court to reach an equitable solution to a perplexing problem that appears to be a case of first impression in Ohio.

In 1975, Buckeye Insurance Company had the primary coverage for Norton Brothers Company and CNA had the excess coverage. Buckeye Insurance

paid its 1975 primary coverage limits of $25,000 towards the total settlement amount of $300,000.

The issue in this appeal is the apportionment of the payment of the remaining $275,000 among the four remaining carriers.

■ The trial court found that each primary insurance carrier had to bear the loss proportionally on the basis of years of coverage. Consequently, each insurer providing primary liability coverage to Norton Brothers Company had to make a contribution in an equal amount for each year that the primary carrier provided coverage. This contribution was to be made without contemplation of when the damage first manifested itself or how much damage was sustained in any given year. Because the utilization of this approach never exhausted the primary limits in any given year, the trial court concluded that there was no excess liability exposure in any given year. Therefore, no contribution to the settlement was required of the excess carriers. We must conclude that this is not a workable rule of law in cases where there is continuous damage over a period of time during which there is more than one liability carrier.

This court is most persuaded by two cases that represent adequate authority for the resolution of the issues in this appeal. The first case is *United States Fid. & Guar. v. Bonitz Insulation Co. of Alabama* (Ala.1982), 424 So.2d 569 (hereinafter *"U.S.F. & G."*). The second case is *Home Ins. Co. v. Landmark Ins. Co.* (1988), 205 Cal.App.3d 1388, 253 Cal.Rptr. 277.

*U.S.F. & G* is astonishingly similar factually to the instant case. In June 1972, Bonitz Insulation entered into a contract with the city of Midfield, Alabama. This contract was for the construction of the roofing and insulation of a gymnasium as part of a larger school construction project. A portion of the roofing job was subcontracted to Vulcan Roofing Company.

The job was completed in the fall of 1972 and the roof began to leak as early as the late fall of that same year. Despite Vulcan's attempts at repairing the roof on several occasions, leakage through the roof continued over the next several years, resulting in a total replacement of the roof in 1978.

Bonitz Insulation was insured by USF & G at the time of the contract and thereafter until January 1, 1977. The general liability coverage was then taken by Employers Mutual Liability Insurance Company of Wisconsin. Both carriers took the position after a lawsuit was filed that the leakage did not constitute an occurrence under their respective policies.

The Alabama Supreme Court reiterated its holding that the term "accident" does not necessarily exclude human fault called negligence. The Alabama Supreme Court held that when the property damage caused by the roof leaks

began, there was an occurrence under USF & G's policy. As Bonitz was merely charged with negligence in installing the roof, there was no evidence that it either expected or intended the roof to start leaking. This satisfied the occurrence question under the USF & G policy. *Id.* 424 So.2d at 571.

In the case *sub judice,* the trial court held that "there was an occurrence (an accident) that happened in 1975 that did some damage at that time but there were subsequent occurrences (accidents) which separately caused some undeterminable damages."

The Alabama Supreme Court in *U.S.F. & G.* probably best refutes this finding at 424 So.2d at 572:

" * * * [T]he roof continued to leak, and the real possibility existed that it would continue to leak each time it rained. Knowledge of this possibility increased every time the roof leaked in the four-year span before Employers' coverage commenced. *Therefore, the damage that resulted when the possibility of leaks became a reality was not unusual, unexpected, or unforeseen and, therefore, not an accident. The absence of an accident necessarily precludes the existence of an occurrence under the Employers policy. Employers, therefore, has no duty to defend Bonitz in the action brought by the City of Midfield and also, of course, no liability for any judgment rendered in that action. * * * *"* (Emphasis added.)

In the instant case, the parties stipulated to the following definition of occurrence:

" 'Occurrence' means an accident, including continuous or repeated exposure to conditions* which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." (Emphasis added.)

This definition of occurrence is the same definition contained in the policies in *U.S.F. & G.*

It is a stipulated fact that the water damage continued unabated at East High School from 1975 to 1988, just as water entry and damage continued for several years in the *U.S.F. & G.* case.

Consequently, under the rationale of *U.S.F. & G.,* there were no accidents during the period of 1976 to 1988. The rationale for this conclusion is that the roof began to leak in 1975, making it a real possibility that the roof would continue to leak every time it rained. Clearly, the knowledge of this possibility increased with every water entry problem and resulting damage. Therefore, the resulting damage was not unusual, unexpected, or unforeseen and not an accident. The absence of an accident necessarily precludes the existence of an occurrence under the definition contained within the policies in

existence from 1976 to 1988. These carriers, as a consequence, had no duty to defend and incurred no liability for any judgment rendered against Norton Brothers Company.

■ Finding no occurrence during the period of 1976 to 1988, we now turn to the manifestation rule in *Home Ins. Co. v. Landmark Ins. Co., supra,* 205 Cal.App.3d 1388, 253 Cal.Rptr. 277.

The issue, in *Home,* was which of two primary insurers was liable for the loss from continuing property damage manifested during successive policy periods. A factual distinction must be drawn at the outset between *Home* and this appeal. The construction in *Home* was completed in February 1973. However, concrete deterioration and resulting damage did not began to manifest itself until December 1980. In the instant case and in *U.S.F. & G.,* the damage began to manifest itself immediately.

The California Court of Appeals was quick to point out two important qualifications. The first was that "manifestation" routinely refers to when the damage first becomes apparent. *Id.,* 205 Cal.App.3d at 1392, 253 Cal. Rptr. at 280. The second was that its holding was limited to the stipulated facts before the court. *Id.,* 205 Cal.App.3d at 1393, 253 Cal.Rptr. at 281.

With those qualifications in mind, the court held that as between two primary insurers, one of which was on the risk on the date of the first manifestation of property damage, and the other on the risk after the date of the first manifestation of damage, the insurer at the time of the first visible manifestations of damage must bear the responsibility for the entire loss.

This court is persuaded by the authority of *U.S.F. & G.* and *Home* as we try to formulate a workable rule of law for cases similar to those in the instant appeal. We, therefore, hold that in a situation where the damage manifests itself immediately and continues unabated into a successive carrier's coverage period, there is no occurrence under the stipulated definition because the continuous damage is no longer unusual, unexpected, or unforeseen and, therefore, not an accident. Alternatively, in situations where the resulting damage does not manifest itself until a period of time has passed and a new carrier is on the risk, the insurer on the risk when the first visible or discoverable manifestations of damage occur must pay the entire claim.

This judgment is reversed and the cause is remanded for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

KRUPANSKY, C.J., and ANN MCMANAMON, J., concur.