**GENCORP, INC., Plaintiff,**

v.

**AIU INSURANCE COMPANY, et al., Defendants.**

No. 5:95CV2464.

United States District Court, N.D. Ohio, Eastern Division.

June 2, 2000.

8. Plaintiffs state that Laksin is a supplier of waste oil to Huth.

Thomas W. Ladd, Dennis P. Monaghan, McCarter & English, Newark, NJ, for GenCorp Inc., plaintiff.

Margaret J. Orbon, Ann F. Frolik, Gordon K. Walton, Clausen Miller, Chicago, IL, Steven G. Janik, Janik & Dorman, Cleveland, OH, for American International Underwriters, defendant.

Clifford C. Masch, Brian D. Sullivan, Reminger & Reminger, Cleveland, OH, Thomas P. Mannion, Reminger & Reminger, Port Clinton, OH, for Allianz Versicherungs—A.G., defendant.

David L. Lester, Ulmer & Berne, Cleveland, OH, for American Re–Insurance Company, defendant.

Chris T. Nolan, Peter D. Janos, Perantinides & Nolan, Akron, OH, David C. Linder, Daniel L. Scott, King & Counsel, St. Paul, MN, for Employers Insurance of Warsau, defendant.

Stephen M. Kelley, Timothy J. Clarke, Kelley, Casey & Clarke, Detroit, MI, Bradford S. Moyer, Kelley, Casey & Clarke, Kalamazoo, MI, for Employers Re-insurance Corporation, defendant.

Daniel F. Gourash, Margaret M. Koesel, Robert D. Anderle, Porter, Wright, Morris & Arthur, Cleveland, OH, for Federal Insurance Company, defendant.

Louis G. Adolfsen, Karen L. Campbell, Alla E. Huppert, Amy C. Clauss, Joanne M. Neilson, Melito & Adolfsen, New York City, Thomas W. Hardin, Hardin & Schaffner, New Philadelphia, OH, for First State Insurance Company, defendant.

James W. Barnhouse, Buckley, King & Bluso, Cleveland, OH, Karen Mendalka Hoerrner, Paul D. Drobbin, Gregory S. Thomas, Robinson, St. John & Wayne, Newark, NJ, for Westchester Fire Insurance Company aka International Insurance Company, defendant.

James W. Barnhouse, Karen Mendalka Hoerrner, Paul D. Drobbin, Gregory S. Thomas, Richard K. Traub, Robert P. Siegel, Traub, Eglin, Lieberman & Straus, Hawthorne, NY, for International Surplus Lines Insurance Company, defendant.

Gerald V. Weigle, Jr., Anne Erskine Black, Michael J. Suffern, Dinsmore & Shohl, Cincinnati, OH, Joel S. Taylor, Dinsmore & Shohl, Columbus, for Liberty Mutual Insurance Company, defendant.

Michael P. Comiskey, John B. Haarlow, Daniel I. Schlessinger, Michael Yetnikoff, Jennifer A. O'Malley, Lord, Bissell & Brook, Chicago, IL, Dennis J. Bartek, Akron, OH, for Certain Underwriters at Lloyd's, London, defendant.

Peter E. Romo, Jr., Francis J. Torrence, Seyfarth, Shaw, Fairweather & Geraldson, San Francisco, CA, Ross D. Roloff, Michael R. Gregg, Sarah M. DiLorenzo, Merlo, Kanofsky & Brinkmeier, Chicago, IL, for Everest Reinsurance Company, defendant.

Louis G. Adolfsen, Karen L. Campbell, Alla E. Huppert, Amy C. Clauss, Joanne M. Neilson, Thomas W. Hardin, for Twin City Fire Insurance Company, defendant.

Ronald A. Rispo, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, Don Benson, Canton, OH, Joseph F. Scott, Canton, OH, for United Insurance Company, defendant.

Brett L. Warning, David E. Trainor, Darlene M. Oliver, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, Mark S. Hura, Cleveland, OH, for Lumbermens Mutual Casualty, defendant.

Ken P. Coleman, Cadwalader, Wickersham & Taft, New York City, for North Atlantic Insurance Company, Ltd., defendant.

John C. Weisensell, Amer, Cunningham, Brennan, Akron, OH, Joseph B. Royster, Bollinger, Ruberry & Garvey, Chicago, IL, Jerome J. Duchowicz, Teresa R. Williams, Michelle B. Sage, Daniel P. Caswell, G. Bora, Haskell & Perrin, Chicago, IL, for Continental Casualty Co., third-party plaintiff.

Ronald A. Rispo, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for Gen-

co Insurance Limited, third-party defendant.

Daniel F. Gourash, Robert D. Anderle, Porter, Wright, Morris & Arthur, Cleveland, OH, for Republic Insurance Company, cross-claimant.

Ronald A. Rispo, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for Genco Insurance Limited, cross-defendant.

Louis G. Adolfsen, Karen L. Campbell, Alla E. Huppert, Amy C. Clauss, Joanne M. Neilson, Melito & Adolfsen, New York City, Thomas W. Hardin, Hardin & Schaffner, New Philadelphia, OH, for First State Insurance Company, cross-claimant.

Ronald A. Rispo, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for Genco Insurance Limited, cross-defendant.

David L. Lester, Ulmer & Berne, Cleveland, OH, for United National Insurance Company, cross-claimant.

M. Paul Gorfinkel, Rivkin, Radler & Kremer, Uniondale, NY, William F. Scully, Jr., Williams, Sennett & Scully, Twinsburg, OH, for Dairyland Insurance Company, cross-claimant.

David J. Fagnilli, Davis & Young, Cleveland, OH, Michael J. Baughman, Cohn & Baughman, Chicago, IL, for Century Indemnity Company aka Insurance Company of North America, cross-claimant.

## MEMORANDUM OPINION & ORDER
(Resolving Doc. No. 798, 802, 803, 812 & 816)

DOWD, District Judge.

This matter is before the Court on briefing by the parties on the issues of trigger and allocation of insurance coverage. Lumberman's Mutual Casualty Co. ("LMC") and Liberty Mutual Ins. Co. have filed Preliminary Arguments on Proposed Jury Instructions on the Issue of Trigger (Doc. No. 802), and American Reinsurance Co. ("American Re") has filed a Brief Regarding Allocation (Doc. No. 803). Everest Reinsurance Company ("Everest") and Gibraltar Casualty Company ("Gibralter")

have joined American Re's brief on allocation. (Doc. Nos.812, 816). GenCorp has filed oppositions to the insurers' trigger and allocation briefs. (Doc. No. 813). LMC and Liberty Mutual have replied. (Doc. No. 819).

In addition, GenCorp has moved for a single trial on the issues of coverage and damages. (Doc. Nos. 798 & 799). The insurers have responded (Doc. No. 809) and GenCorp has replied. (Doc. No. 815).

For the reasons set forth below, coverage will be triggered by a continuous trigger theory employing injury-in-fact as the initial trigger event, if GenCorp can show that the nature of property damage in this case was continuous. Otherwise, injury-in-fact will trigger coverage. The Court further determines that allocation should be made on a pro-rata basis per *Lincoln Electric Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672 (6th Cir.2000). Finally, GenCorp's Motion for a Single Trial is DENIED.

## I. Introduction

This is a declaratory judgment action with respect to insurance coverage for underlying claims against plaintiff GenCorp, Inc. ("GenCorp"), all of which arise out of GenCorp's alleged contamination of the environment by its long term disposal of industrial wastes at several sites located in the northeast United States. GenCorp is seeking coverage from the defendant insurers under policies issued to GenCorp's predecessor, General Tire & Rubber Co. The alleged contamination is the subject of the separate litigation of *Olin v. GenCorp*, Case No. 5:93CV2269 (N.D.Ohio). Trial in the present case is set to begin August 14, 2000. The Court has determined to limit trial to issues concerning the "Big D Campground" in Ashtabula County, Ohio, which is the largest of the allegedly contaminated sites at issue in *Olin*.

On October 20, 1999, the Court ruled on the many summary judgment motions pertaining to all sites at issue in *Olin*. (Doc.

No. 736). At that time, the Court declined to rule on GenCorp motion for partial summary judgment on the issues of trigger and allocation because judgment on these issues would have been premature. GenCorp had argued that the undisputed facts mandate that the Court apply a "continuous trigger" rule to determine which policies are liable for clean-up costs at the respective sites. (Doc. No. 571). Certain defendants opposed GenCorp's motion on trigger and allocation on the grounds that the factual record did not allow the Court to properly select a trigger and/or allocation theory to apply to the policies at issue. (Doc. No. 624). In particular, the insurers took issue with GenCorp's reliance on a single expert, hydrologist Dr. Charles Andrews, to establish that "continuous property damage" took place during the entire period beginning with exposure to the completion of remediation.

Dr. Andrews had opined that industrial wastes were disposed of at the Big D site between 1964 and 1976; that the soil became contaminated immediately following rupture or failure of certain drums containing hazardous materials; and that groundwater became contaminated soon after placement of bulk waste materials in excavated areas. Dr. Andrews further opined that the contamination process continued at least until the site was remediated in 1994. The insurers pointed out that Dr. Andrews admitted in deposition that he reached these opinions without conducting soil or groundwater testing at Big D, or performing any geologic modeling of the site. Insurers also pointed out several other alleged inadequacies in Dr. Andrews' deposition testimony.

The Court agreed with the insurers that the factual predicate for deciding upon a theory of trigger and allocation had not been established sufficiently enough to al-low it to properly select a theory. Therefore, because a decision on GenCorp's motion could not lead to a judgment, the Court denied GenCorp's motions for partial summary judgment. *See Memorandum Opinion* pp. 53–54 (October 20, 1999).

In discussions with the Court subsequent to the Court's ruling on the summary judgment motions, the parties expressed the desire to have some guidance regarding trigger and allocation, which are critical issues. In particular, the parties stated that a decision on this issue will allow them to better prepare their case for trial and will possibly facilitate settlement talks. Consequently, the Court allowed briefing on the issues of trigger and allocation, to be styled as preliminary arguments regarding jury instructions.

The Court is of the opinion that it would be unfair to allow the parties to prepare for trial without knowing what laws will govern the facts they must show. In addition, deciding this difficult issue now will conserve precious judicial resources during trial and help the Court is jury instructions that are better considered than otherwise would be the case. The Court still believes that the facts are not developed sufficiently to allow it to definitively select a single trigger rule. However, in reviewing the parties' briefs on this issue, it is clear that the Court can easily narrow down the trigger rules in a way that will be useful to the parties in preparing for trial. To that end, and accounting for future factual development, the Court has determined to issue this Opinion regarding preliminary arguments on jury instructions with respect to trigger and allocation.[1]

## II. Interpretation of State Law

The parties agree that Ohio law applies to both the trigger and allocation issues.

---

1. The Court is satisfied that it is not rendering an advisory opinion. The Court's opinion does not offer advice to a co-equal branch of government nor does it offer advice on the legality of any contemplated action by either private litigants or a legislative body. Though the issue may be seen as unripe, the Court deems its resolution to be a matter of judicial discretion and case management. *See* Evan Tsen Lee, "Deconstitutionalizing Justiciability, The Example of Mootness," 105 Harv. L.Rev. 603, 644–45 (1992).

In considering questions of state law, this Court is bound by the decisions of the highest court of the state, in this case the Ohio Supreme Court. *Ruth v. Bituminous Casualty Corp.*, 427 F.2d 290, 292 (6th Cir.1970). If the Ohio Supreme Court has not spoken, this Court is obligated to follow published intermediate Ohio appellate court decisions. *Id.* Absent any controlling state cases, the Court must express its best judgment, based on available information, as to how the Ohio Supreme Court would rule if faced with the issue presented in the case. *Tennessee River Pulp v. Eichleay Corp.*, 708 F.2d 1055, 1057 (6th Cir.1983). "To the extent that the state supreme court has not yet addressed the issue presented, it is [the federal court's] duty to anticipate how that court would rule." *Bailey Farms, Inc. v. NOR–AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir.1994).

■ Under Ohio law, a court interpreting insurance policies must look first and primarily to the express terms and conditions found in the policies. *See Affiliated FM Ins. Co. v. Owens–Corning Fiberglas Corp.*, 16 F.3d 684 (6th Cir.1994); *Universal Underwriters Ins. Co. v. Shuff*, 67 Ohio St.2d 172, 423 N.E.2d 417 (1981). Language that is reasonably susceptible of more than one meaning is construed liberally in favor of the insured. *See U.S. Fidelity & Guar. Co. v. Lightning Rod Mut. Ins. Co.*, 80 Ohio St.3d 584, 586, 687 N.E.2d 717 (1997). But if a policy term has a plain meaning, "it is neither necessary nor permissible to resort to [rules of] construction unless the plain meaning would lead to an absurd result." *Olmstead v. Lumbermens Mut. Ins. Co.*, 22 Ohio St.2d 212, 216, 259 N.E.2d 123 (1970); *Karabin v. State Auto. Mut. Ins. Co.*, 10 Ohio St.3d 163, 462 N.E.2d 403 (1984).

### III. Trigger

#### A. *The Policies*

The policies at issue in this case are general liability "occurrence" policies.

The operative language in these policies derives from standard language that is virtually identical to that which was before the courts in the cases cited herein. The LMC policy, whose period of coverage extends from December 1, 1973 to January 1, 1976, agrees to "indemnify the insured for such loss as would have been payable under all the terms of the underlying policy(ies) described in Declaration 5 (herein called underlying insurance)...." The policy underlying the LMC policy periods is Continental Casualty Company policy number RD8934719, which promised

> to indemnify the Insured for all sums which the Insured shall be obligated to pay by reason of the liability,
>
> (a) imposed upon the Insured by law,
>
> or
>
> (b) assumed by the Insured under contract or agreement but only in respect of operations by or on behalf of the Named Insured, for damages, direct or consequential, and expenses, all as defined by the term 'ultimate net loss,' on account of ... Property Damage ... caused by or arising out of each occurrence.

An "occurrence" is then defined as

> an event or continuous or repeated exposure to conditions, which unexpectedly causes Personal Injury and/or Property Damage and/or Advertising Liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from each premises location shall be deemed an occurrence.

The Liberty Mutual policy covers the period from December 1, 1966 to January 1, 1970 and contains language similar to the LMC policy. It agrees that "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... property damage to which this insurance applies, caused by an occurrence...." The Liberty Mutual policy defines "occurrence" as

an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured. . . .

### B. *The Law & Ruling*

As the Sixth Circuit pointed out in *The Lincoln Electric Co. v. St. Paul Fire & Marine Ins., Co.,* 210 F.3d 672 (6th Cir. 2000), the construction of policy terms in the context of long-term exposure, delayed manifestation cases is somewhat of a fiction:

This dispute between the parties did not arise because there was objective latent uncertainty at the time of contract formation with respect to the inherent meaning of words used to express agreement. Rather, this dispute centers upon how the law should apply to a contract with clear meaning that has proven inadequate in the context of environmental change. *See Insurance Co. of N. Am. v. Forty–Eight Insulations, Inc.,* 633 F.2d 1212, 1217 (6th Cir.1980). The policies were internally unambiguous when viewed through the lens of original expectations and the scheme the parties believed they were creating. In hindsight, however, the policies now reveal the fact that, at the time of the early policy agreements, neither party contemplated their future encounter with long-term exposure and delayed manifestation injury claims.

*Id.* at 685, n. 13. Nevertheless, courts have struggled to stay close to the policy language and to employ common sense without arriving at a result that is absurd or that renders coverage under the policies "illusory." *See Insurance Co. of North America v. Forty–Eight Insulations Co.,* 633 F.2d 1212, 1217 (6th Cir.1980); *see also Keene Corp. v. Insurance Co. of North America,* 667 F.2d 1034, 1044–48 (D.C.C.1981).

Perhaps because occurrence policies have proven "inadequate" in the context of environmental damages, four general theories have arisen as to how occurrence policies are triggered: manifestation, injury-in-fact, exposure, and continuous. *Dow Chemical Co. v. Associated Indemnity Corp.,* 724 F.Supp. 474, 478 (E.D.Mich. 1989). If coverage is triggered when the property damage or personal injury becomes known to the property owner or victim, the trigger is identified as the manifestation trigger. *Id.* If coverage is triggered when the personal injury or property damage first occurs, the trigger is known as the injury-in-fact trigger. *Id.* If coverage is triggered when the first injury-causing conditions occur, the approach is known as the exposure trigger. *Id.* If coverage is triggered such that insurance policies in effect during different time periods all have an indemnification duty, the trigger is termed continuous. *Id.* These policies sometimes overlap.

The Ohio Supreme Court has no opinions on the issue of trigger, and this Court has been unable to find any Ohio appellate decisions dealing with the issue of trigger in the context of environmental contamination. As advocates should, each party's counsel argues that Ohio law favors the theory most advantageous to its client. The insurers promote the manifestation trigger. Since the environmental damage in this case seems to have manifested, at the earliest, in 1981–82, application of the manifestation trigger seemingly would deprive GenCorp of coverage altogether. GenCorp, on the other hand, champions the continuous trigger. GenCorp probably prefers this trigger because it would allow GenCorp to trigger every policy that covered periods between exposure and manifestation. That is, GenCorp would be able to trigger coverage for the entire period between the beginning of operations in 1964 and the point of manifestation, which occurred at the earliest in 1981–82. The continuous trigger theory is favored by insureds because it tends to maximize coverage; but it has the added advantage (to insureds) of relieving the insured of the

burden to prove when damage actually occurred or began to occur.

The Court cannot unequivocally endorse either of the parties' positions. Rather, the Court is of the opinion that, with one possible caveat, the appropriate trigger theory for this case is a continuous trigger rule that employs injury-in-fact as the initial triggering event. This is a version of the continuous trigger that differs from GenCorp's version, which would employ exposure to injurious conditions as the initial triggering event. The caveat to the Court's choice of trigger is that in order to justify application of the continuous trigger rule, GenCorp has to show that the damage was continuing in nature, as opposed to one-shot or episodic. Otherwise, the policies will be triggered by injury-in-fact. The reasoning for these conclusions is set forth below.

In *Inland Waters Pollution Control, Inc. v. National Union Fire Ins. Co.*, 997 F.2d 172 (6th Cir.1993), drums of waste paint material were crushed on a certain property during January and early February of 1981. *Id.* at 179–80. During the crushing process, some liquids escaped into the soil. The crushed drums were subsequently taken to a landfill, which rejected them. The drums were then dumped on the same property where the crushing had occurred. On February 10, 1981, the crushed drums were removed and taken to a landfill that would accept them. Six years later, a hydrogeological survey revealed a significant amount of contamination in the soil and groundwater on the property. *Id.* The company responsible for crushing the drums sued its insurer based on an occurrence policy containing language substantially similar to those at issue in the present litigation.

Applying Michigan law, the *Inland Waters* court found that the "policy language indicates that coverage is triggered by property damage which occurs during the policy period." *Id.* at 186. Therefore, ruled the court, the proper trigger theory to apply was that of injury-in-fact. *Id.* In

so ruling, the court followed the "general rule applied by most courts ... that the time of an occurrence is not the time the accident occurred or the wrongful act was committed, but rather the time the injury actually resulted." *See* John P. Arness and Randall D. Eliason, "Insurance Coverage for 'Property Damage' in Asbestos and Other Toxic Tort Cases," 72 Va.L.Rev. 943, 970 (1986); *see also Dow Chemical v. Associated Indemnity Corp.*, 724 F.Supp. at 481 (E.D.Mich.1989); *Detrex Chemical Indus. Inc. v. Employers Ins. of Wausau*, 746 F.Supp. 1310, 1322 (N.D.Ohio 1990); *Triangle Publications, Inc. v. Liberty Mutual*, 703 F.Supp. 367, 371 (E.D.Pa.1989) (under Pennsylvania law, "[t]he plain language [of the policy] supports only one construction: the injury-in-fact analysis."); *Gelman Sciences, Inc. v. Fidelity and Casualty Co. of New York*, 456 Mich. 305, 319–20, 572 N.W.2d 617 (1998) (injury-in-fact analysis preferred under Michigan law); Insurer's Reply Brief at 3 ("The LMC and Liberty policies issued to GenCorp are triggered when property damage results during the policy period.").

The *Inland Waters* court based its ruling on a careful analysis of four district court cases, two of which applied injury-in-fact trigger and two of which applied continuous trigger. In *Dow Chemical Co. v. Associated Indem. Corp.*, 724 F.Supp. 474 (E.D.Mich.1989), a mortar additive had caused corrosion which manifested itself years after construction had been completed. The court rejected manifestation and exposure theories and found that injury-in-fact analysis was the most consistent with the policy language. In *Detrex Chemical Indus., Inc. v. Employers Ins. of Wausau*, 746 F.Supp. 1310 (N.D.Ohio 1990), the court denied a motion asking it to rule that continuous trigger applies as a matter of law, and instead read the occurrence policy language to mandate the use of injury-in-fact trigger. *Id.* at 1325. Importantly, the *Detrex* court rejected the continuous trigger because "Detrex has not placed any facts on the record [to show] a 'contin-

uous injury' or continuous 'property damage' during any of the several ... policy periods." *Id.* at 1322.

The other two cases discussed in *Inland Waters* are *United States Fidelity and Guaranty Co. v. Thomas Solvent*, 683 F.Supp. 1139 (W.D.Mich.1988) and *New Castle Cty. v. Continental Casualty Co.*, 725 F.Supp. 800 (D.Del.1989). In *Thomas Solvent*, an insured was the defendant in a litigation alleging that groundwater had been contaminated over a number of years by a leak in one of the insured's underground storage tanks for industrial solvents. *Id.* at 1161. The court applied the continuous trigger because the complaints alleged continuing releases and continuing injuries and damages. *Id.*

Like the *Thomas Solvent* court, the court in *New Castle* also applied the continuous trigger theory. The *New Castle* case involved contamination of wells allegedly caused by pollution leaching from a county landfill that had begun operations in 1969. The *New Castle* court analogized to asbestosis cases, in which courts have applied the continuous trigger because of the progressive nature of the bodily injury from asbestosis. *Id.* at 809.

In finding that injury-in-fact rather than continuous trigger was the proper analysis, the *Inland Waters* court distinguished *Thomas Solvent* and *New Castle* on the grounds that "both cases involved continuing contamination caused by leaking and leaching from sources of pollution in active use during the policy periods" whereas the *Inland Waters* case involved "contamination allegedly caused by a single exposure to a pollutant prior to the policy period." 997 F.2d at 186. *Inland Waters* also distinguished *Thomas Solvent* and *New Castle* on the grounds that in those cases, "the date upon which the continuous damage first occurred could not be determined" whereas "in the present case the date upon which damage first occurred is ascertainable." *Id.*

Another Sixth Circuit case to consider is *Lincoln Electric*. There, the insured was subject to suits for lung disease, cancer and/or neurological problems arising from exposure to manganese and asbestos in welding fumes. The exposures dated as far back as the 1930s. *Id.* at 678. Noting that Ohio law was "very sketchy" as regards trigger and that the policies at issue did not address cases of "long-term exposure and delayed manifestation injury," the court adopted a "flexible continuous trigger" which created a rebuttable presumption that "all exposure prior to diagnosis contributed equally to an injury-in-fact...." *Id.* at 688–89. The *Lincoln Electric* court noted that the suits in this type of case "allege both harmful exposure for decades and delayed manifestation of injury, but do not allege any precise moment of transformation from wellness to injury." *Id.* at 676.

There appear to be several rules arising out of these cases. First, property damage (or bodily injury) triggers policy coverage; so the preferred trigger analysis is that of injury-in-fact. Second, where damage or injury is the result of a continuing process rather than a single or episodic exposure, continuous trigger should apply. Third, where the starting point of damage in a continuing process is ascertainable, coverage will be triggered initially by injury-in-fact; but where the starting point of injury is difficult to determine, coverage may be triggered initially by exposure to the injurious condition.

None of the above cases has put these rules together. However, in *Armstrong World Indus. v. Aetna Casualty Co.*, 45 Cal.App.4th 1, 52 Cal.Rptr.2d 690 (1996), the court found that coverage is triggered when the injury actually occurred; but it also considered whether the continuous trigger rule should apply because the property damage was continuous and progressive. *Id.* at 96, 52 Cal.Rptr.2d 690. The court determined that "whether the underlying damage or injury is in fact continuous is a matter for determination by the trier of fact." *Id.* at 96, 52 Cal.

Rptr.2d 690. Under the particular facts in *Armstrong*, the court found that property damage was episodic rather than continuous; *Id.;* so it altered the trigger rule accordingly. But the point is that the trigger analysis it applied depended on a factual showing of the nature of the damage that occurred.

▇ On the strength of *Inland Waters, Lincoln Electric* and *Armstrong World Industries,* the Court finds that a continuous trigger employing injury-in-fact as the initial triggering event is the applicable theory in this case if GenCorp can substantiate its claim that the injuries to Big D were continuing in nature. In the absence of such a showing, injury-in-fact will be the governing trigger. In addition, since there is no indication that the initial point of injury in this case is difficult to ascertain—GenCorp's expert has even opined on the matter—it appears that injury-in-fact rather than exposure should be the event that is deemed to trigger continuous coverage. That is, depending on the evidence presented at trial, coverage will be triggered for the periods between the first point of injury-in-fact and manifestation.

The applicability of the continuous trigger rule in the context of hazardous waste cases, as well as its compatibility with injury-in-fact analysis, is evident in considering the genesis of the continuous trigger rule. The continuous trigger rule originated in asbestosis cases in which bodily injury progresses and becomes more serious over time. *See* John P. Arness and Randall D. Eliason, "Insurance Coverage for 'Property Damage' in Asbestos and Other Toxic Tort Cases," 72 Va.L.Rev. 943, 970 (1986); *see also Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.,* 73 F.3d 1178, 1196 (2d Cir.1995) (noting that California and New Jersey apply continuous trigger where there are successive injuries, and that Texas is likely to do so). The controversy in asbestosis cases is, when does the injury occur? *See e.g. Keene v. Insurance Corp. of North America,* 667 F.2d at 1042. Some courts have

held that injury occurs only when diagnosable symptoms manifest themselves; and other courts have held that injury occurs upon exposure to asbestos. But the main question in these cases never really diverges from the issue of injury. *See e.g. Owens–Corning Fiberglas Corp. v. American Centennial Ins. Co.,* 74 Ohio Misc.2d 183, 188, 660 N.E.2d 770 (Ct. of Com.Pl. Feb. 22, 1995) (applying continuous trigger rule to an asbestosis case because "in every instance of asbestos exposure there is immediate injury which continues ... throughout a person's life."); *Gelman Sciences,* 456 Mich. at 323–24, 572 N.W.2d 617 quoting Comment, "Nailing Jello to the Wall," 83 Cal.L.Rev. 1243, 1290–91 (1995) (suggesting that the trigger theories are methods to simplify the fact-finding process by taking certain shortcuts in determining when injury occurred).

It is clear from the asbestosis cases that the continuing trigger closely tracks the injury-in-fact trigger. *See Gelman Sciences,* 456 Mich. at 314 & n. 8, 572 N.W.2d 617 (noting that the injury-in-fact approach often looks identical to the continuous trigger theory). Property damage cases, of course, are distinct from asbestosis/bodily injury cases. In the great majority of property damage cases, the damage does not get worse over time and the continuous trigger rule will not be appropriate. *Id.* But it is recognized that for some property damage cases, the analogy to asbestosis is apt:

> In a certain class of property damage cases factually more analogous to the progressive bodily injury situation ... the continuous trigger may be appropriate. When chemicals from an improperly constructed toxic waste landfill leach slowly into adjacent property, for instance, new property may be affected with each passing day, while the damage to already affected property, and the associated costs of remedy, may increase steadily as well. But the law developed in the context of insidious diseases should be transported to the property

damage context only when the facts support the analogy—when the new injury is in fact continuously occurring.

*Id.* at 973.

If GenCorp is able to show that the damage to Big D occurred on a continuing basis, the present case is in the category of cases for which the analogy to asbestosis may be proper, and a continuous trigger is applicable.

### C. GenCorp's Version of Continuous Trigger Does Not Apply

Admittedly, the application of the continuous trigger rule usually entails triggering every policy period between exposure to the injury-causing condition and manifestation of the injury; and this is the version of the continuous trigger rule that GenCorp urges. But the Court has concluded that in this particular factual circumstance, it is inappropriate to allow coverage to be initially triggered by mere exposure as opposed to injury-in-fact, since it does not appear that GenCorp is faced with an unreasonable task in proving the point of initial injury.

The main difficulty with GenCorp's version of continuous trigger is that allowing coverage to be triggered when exposure does not result in damage would be contrary to the plain language of the policies. In *Eagle–Picher Indus., Inc. v. Liberty Mutual Ins. Co.,* 682 F.2d 12 (1st Cir. 1982), the First Circuit applied Ohio law and rejected the exposure theory on the grounds that "the policies clearly distinguish between the event which causes injury—the accident or exposure—and the resulting injury. . . ." *Id.* at 19. If exposure theory is invalid on this grounds, a theory which relies on exposure to trigger continuous coverage must also be invalid on this grounds. As the *Eagle–Picher* court recognized, it is the resulting injury, not the

exposure, which is required to take place "during the policy period" in order to trigger coverage. *Id.* The continuous trigger theory that GenCorp espouses has been rejected by other courts on just this basis: "[a]ny argument that mere exposure—without injury—triggers liability is simply unsound linguistically." *Detrex Chemical Indus. Inc. v. Employers Ins. of Wausau,* 746 F.Supp. at 1324 (applying Michigan law) quoting *Abex Corp. v. Maryland Casualty Co.,* 790 F.2d 119, 127 (D.C.Cir. 1986); *See also Dow Chemical Co.,* 724 F.Supp. at 481 ("[a]bsolutely nothing in the policy language suggests that an event can trigger coverage prior to the time that the event results in property damage. By the same token, nothing suggests that exposure to conditions triggers coverage prior to the time that property damage results from such exposure."); *Sandoz, Inc. v. Employer's Liability Assurance Corp.,* 554 F.Supp. 257, 265–66 (D.N.J.1983) (rejecting exposure theory because the trigger of liability in an occurrence policy is an injury during the policy period rather than a negligent act).[2]

The exception to the rule that trigger cannot be premised upon exposure is that in the "injurious process" cases, courts have permitted exposure to act as an initial trigger where "the date upon which the continuous damage first occurred could not be determined." *See Inland Waters Pollution Control v. National Union Fire Ins. Co.,* 997 F.2d at 186 citing as examples *New Castle County v. Continental Casualty Co.,* 725 F.Supp. 800 (D.Del.1989) and *United States Fidelity and Guaranty Co. v. Thomas Solvent,* 683 F.Supp. 1139 (W.D.Mich.1988). Courts prefer injury-in-fact as the initial trigger point where the "date upon which damage first occurred is ascertainable;" *Id.;* however, they will allow exposure to trigger coverage where the injury-in-fact analysis would "impose

**2.** GenCorp relies on *Keene,* which held that "regardless of whether exposure to asbestos causes an . . . injury, the fact that it is part of an injurious process is enough for it to constitute 'injury' under the policies." 667 F.2d at

1046. This Court finds *Keene* unpersuasive because its holding runs contrary to the plain policy language requiring damage during the policy period.

on either party the burden of proving the impossible." *Detrex Chemical Indus. Inc. v. Employers Ins. of Wausau,* 746 F.Supp. at 1322 quoting *New Castle County v. Continental Casualty Co.,* 725 F.Supp. 800 (D.Del.1989); *See also Gelman Sciences,* 456 Mich. at 323–24 & n. 12, 572 N.W.2d 617 (noting that where a plaintiff may not be able to pinpoint when damage actually occurred, courts can employ rules "designed to assist a plaintiff in the face of an insurmountable burden of proof.")

Of course, in *Lincoln Electric* the court applied the continuous trigger rule in the form that GenCorp advocates; that is, it allowed continuous trigger of coverage to be prompted by exposure to injurious conditions. But this Court believes that the language of *Lincoln Electric* supports the view that exposure should only act as a trigger where the first date of injury-in-fact is unreasonably difficult to determine. The *Lincoln Electric* court's rebuttable presumption that "all exposure prior to diagnosis contributed equally to an injury-in-fact ...," *Id.* at 688–89, is clearly premised on the idea that injury-in-fact, not exposure, is the optimum triggering event. Further, it appears that the *Lincoln Electric* court permitted exposure to act as a triggering event only because of lack of evidence: the "precise moment of transformation from wellness to injury" was not alleged in the complaints for that case. *Id.* at 676.

The facts of this case show that *Lincoln Electric's* exception allowing coverage to be triggered by exposure to injurious conditions should not apply in the present case. GenCorp's expert has already stated opinions as to when injury occurred. In addition, the *Inland Waters* rejected exposure theory and applied injury-in-fact analysis to very similar property damage, stating that the "date upon which damage first occurred is ascertainable." 997 F.2d at 186. Because showing injury-in-fact does not seem to present GenCorp with the task of proving the impossible, GenCorp cannot

premise trigger of coverage upon exposure to injurious conditions.

### D. Manifestation Theory Does Not Apply

■ The insurers' manifestation theory must be rejected because it is simply unsupported by the policy language. "The policy language does not even hint that property damage must be known to anyone in order to trigger coverage. Likewise, nothing in the policy language indicates that property damage does not exist unless someone knows about it." *Dow Chemical v. Associated Indemnity Corp.,* 724 F.Supp. at 481; *See also Gelman Sciences,* 456 Mich. at 307, 572 N.W.2d 617 (finding "no support for the manifestation trigger in the relevant policy language").

The insurers, however, insist that Ohio law clearly requires application of the manifestation trigger. They rely primarily *Cleveland Board of Educ. v. R.J. Stickle Int'l,* 76 Ohio App.3d 432, 602 N.E.2d 353 (8th Dist.1991), in which the property damage at issue was a school roof that leaked continuously between 1975 and 1988. The *R.J. Stickle* court held that "in situations where the resulting damage does not manifest itself immediately until a period of time has passed and a new carrier is on the risk, the insurer on the risk when the first visible or discoverable manifestations of damage occur must pay the entire claim."[3] *Id.* at 688. The insurers further cite *Reynolds v. Celina Mutual Ins.,* 2000 WL 202107 (Ohio App. 9 Dist.) as stating that "the date for determining whether property damage falls within the coverage period of an occurrence policy is when the first visible or discoverable manifestations of damage occur." *Id.* at *3.

The insurers argue that this Court is required to follow *R.J. Stickle* and *Reynolds* under the rule articulated in *Garry v. TRW, Inc.,* 603 F.Supp. 157 (N.D.Ohio 1985) (Aldrich, J.). *Garry* stands for the proposition that in the absence of state

---

3. This was an alternative holding.

supreme court guidance, a federal court is obligated to follow the opinions of state appellate courts. *Id.* at 160. The point of that rule, however, is that the Court is to use its best judgment, based on available information, as to how the Ohio Supreme Court would rule if faced with the issue presented in the case. *Tennessee River Pulp v. Eichleay Corp.*, 708 F.2d at 1057.

In a closely analogous situation, the Sixth Circuit in *Inland Waters* found that Michigan law did not provide a proper trigger rule for environmental contamination cases. The Sixth Circuit discussed a Michigan appellate case that found manifestation theory applicable where gases released in homes and business had caused personal injury and property damage. 997 F.2d at 182–83 discussing *Transamerica Ins. Co. v. Safeco Ins. Co.*, 189 Mich.App. 55, 472 N.W.2d 5 (1991). However, the Sixth Circuit nonetheless noted that "no Michigan court has decided which trigger of coverage theory is applicable in a case involving environmental discharge of pollutants." *Id.* at 183. Finding the Michigan appellate decision distinguishable, the Sixth Circuit based its ruling on decisions from other jurisdictions and held that in the context of environmental contamination the Michigan Supreme Court would opt for injury-in-fact theory rather than manifestation. *Id.* at 183–88.[4]

Similarly, in *Lac D'Amiante Du Quebec, Ltee v. American Home Assurance Co.*, 613 F.Supp. 1549 (D.N.J.1985), the court noted that under New Jersey law, which parallels Ohio law, "manifestation theory would be applied in the usual property damage case." *Id.* at 1560. But in deciding a property damage asbestos claim, the court applied the continuous trigger rule because the particular property damage at issue was of an ongoing and progressive nature. *Id.* at 1560–61.[5] Further, in *NCR*

*Corp. v. Lumberman's Mutual Casualty Co.*, 1992 U.S.Dist. LEXIS 21047 (D.Del. 1992), the court held that the general language in *R.J. Stickle* arguably embracing the manifestation theory was not applicable in the context of the slow release of toxic substances. *Id.* at *19. *Cf. Lincoln Electric* (applying Ohio law and adopting continuous trigger in "injurious process" asbestosis case).

These cases indicate that Ohio law does not mandate the application of the manifestation theory in the present case.

In further support of the manifestation theory, however, the insurers rely on *Eagle–Picher Indus. v. Liberty Mutual Ins. Co.*, 523 F.Supp. 110 (D.Mass.) and 682 F.2d 12 (1st Cir.1982), in which a district court and the First Circuit applied Ohio law in the context of a bodily injury claim to find that coverage was triggered upon manifestation of the disease asbestosis. But the discussion in these cases actually supports the idea that injury-in-fact is the preferred analysis. Both the district and appellate courts rejected the exposure theory because of expert testimony that "subclinical injuries to the lung produced early in the destructive process do not occur simultaneously with exposure." 523 F.Supp. at 115, 682 F.2d at 18–19 & n. 3. The courts opted for manifestation theory only because they accepted that the evidence showed that "exposure to asbestos results in 'personal injury' when it produces clinically evident diagnosable disease." 523 F.Supp. at 116, 682 F.2d at 24. In other words, manifestation theory was adopted because damage was thought synonymous with manifestation. Here, however, there is no question that Big D was damaged prior to manifestation, so there is no basis for instructing the jury on the manifestation trigger.

---

4. As noted, the *Inland Waters* court also acknowledged that a continuous trigger theory may be appropriate where damage is continuous. 997 F.2d at 186.

5. The *Lac D'Amiante* court did not, however, adopt the theory in the form GenCorp urges. Like other courts adopting the continuous trigger rule, it equated the first instance of exposure with the first instance of damage. 613 F.Supp. at 1551, 1560.

As this Court has already noted, courts dealing with environmental property damage generally have adopted injury-in-fact analysis or a continuous trigger theory if the facts justified it. This Court, using its "best judgment," sees no reason why the Ohio Supreme Court would view things any differently.

## V. Conclusion

For the reasons set forth above, a continuous trigger theory employing injury-in-fact as the initial triggering event is the appropriate theory for this case if GenCorp can show that the nature of property damage in this case was continuous. Otherwise, injury-in-fact will trigger coverage. The Court further determines that allocation should be made on a pro-rata basis per *Lincoln Electric.* Finally, GenCorp's Motion for a Single Trial is DENIED.

IT IS SO ORDERED.