[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] We note that the caption of the original complaint in this case incorrectly identified this defendant as Travelers Insurance Company. We have used the correct name in our caption.
 OPINION.
{¶ 1} Plaintiffs-appellants, John Plum, Plum Construction, and Plum-Ayer (collectively "Plum"), filed a complaint against defendant-appellees, West American Insurance Co. and Travelers Casualty and Surety Company of America, for breach of contract and bad faith. The trial court granted both West American's and Travelers's motions for summary judgment.
 {¶ 2} The record shows that John Plum started Plum Construction Company in 1974. Phil Wheeler Insurance Agency was his agent and sold insurance coverage to Plum for many years. Plum Construction was insured through West American. For a short time in the 1990s, Plum Construction was called "Plum-Starks Construction Company." Plum later changed the company's name back to Plum Construction, and Plum Construction was the named insured under the West American policy.
 {¶ 3} In 1985, Plum formed a partnership with Charles Ayer called Plum-Ayer. Plum-Ayer was insured through the Phil Wheeler agency by Aetna Insurance, which changed to Travelers following a merger. The partnership's purpose was to develop the Riverhills Subdivision in Anderson Township.
 {¶ 4} In 1989, Plum-Ayer deeded property in the Riverhills Subdivision to Robert S. and Delores C. Remington, on which they built a home. In late 1996, the Remingtons noticed the drywall in their home was cracking, and in 1997, they noticed that the porch and the deck were separating from the house. Consequently, the Remingtons filed suit against the builder, Ashley Development, Inc. Ashley joined John Plum, Charles Ayer, Plum Construction, and Plum-Ayer as third-party defendants, alleging breach of contract and negligent or fraudulent failure to disclose the existence of a geotechnical survey performed on the property in the mid 1980s. Subsequently, the Remingtons filed an amended complaint that contained allegations against Plum-Ayer.
 {¶ 5} Following a jury trial, the Remingtons obtained a judgment against Ashley Development, John Plum, and Plum-Ayer, but not Plum Construction. The jury apportioned 85% of the damages to Ashley Development and 15% to John Plum and Plum-Ayer. The portion of damages attributable to John Plum and Plum-Ayer was $62,454.80.
 {¶ 6} West American provided a defense for the Plum entities under a reservation of rights with regard to indemnification under its policies. Travelers also reserved its rights with regard to the coverage provided under the Plum-Ayer policies. Travelers and its predecessor, Aetna, had issued policies insuring Plum-Ayer from March 20, 1987, through March 20, 1995. Plum-Ayer, John Plum, and Charles Ayer were insured under those policies, but Plum Construction was not.
 {¶ 7} Both West American and Travelers denied coverage under their policies. West American's primary reason was that Plum-Ayer was not a named insured under its policies, which provided coverage for Plum Construction. Travelers denied coverage because its policies were "occurrence-based," and because the "occurrence" in this case did not happen while the policies were in effect. The trial court ultimately agreed with the insurance companies' positions and granted their motions for summary judgment.
 {¶ 8} In its sole assignment of error, Plum contends that the trial court erred in granting West American's and Travelers's motions for summary judgment. We find no merit in Plum's arguments relating to the West American policy. But we hold that the trial court improperly granted Travelers's motion for summary judgment. Therefore we sustain the assignment of error in part.
 {¶ 9} An insurance policy is a contract, and the relationship between the insurer and the insured is purely contractual in nature. Nationwide Mut. Ins. Co. v. Marsh (1984),15 Ohio St.3d 107, 109, 472 N.E.2d 1061; Equity Diamond Brokers, Inc. v.Transnatl. Ins. Co., 151 Ohio App.3d 747, 2003-Ohio-1024,785 N.E.2d 816, ¶ 10. The interpretation and construction of insurance policies is a matter of law for the court to determine using rules of construction and interpretation applicable to contracts generally. Gomolka v. State Automobile Mut. Ins. Co.
(1982), 70 Ohio St.2d 166, 167-168, 436 N.E.2d 1347; EquityDiamond Brokers, supra, at ¶ 10. In insurance policies, as in other contracts, courts should give words and phrases their ordinary meaning unless something in the contract indicates a contrary intention. Olmstead v. Lumbermens Mut. Ins. Co.
(1970), 22 Ohio St.2d 212, 216, 259 N.E.2d 123; Nationwide Ins.Co. v. Tobler (1992), 80 Ohio App.3d 560, 564, 609 N.E.2d 1318.
 {¶ 10} Where an insurance policy's provisions are clear and unambiguous, courts must apply the terms as written and may not enlarge the contract by implication to embrace an object distinct from that contemplated by the parties. Gomolka, supra, at 168,436 N.E.2d 1347; Equity Diamond Brokers, supra, at ¶ 11. But where the provisions of an insurance policy are reasonably susceptible of more than one interpretation, courts must construe them strictly against the insurer and liberally in favor of the insured. King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208,519 N.E.2d 1380, syllabus; Equity Diamond Brokers, supra, at ¶ 11.
 {¶ 11} West American argues that Plum-Ayer was not an insured under its policies. Each of the West American policies issued to Plum Construction and Plum-Starks Construction contained a commercial general-liability coverage form. This form provided that "[t]hroughout this policy the words `you' and `your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. * * * The word `insured' means any person or organization qualifying as such under WHO IS AN INSURED * * *." Under the section entitled "WHO IS AN INSURED," the policy stated, "No person or organization is an Insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations."
 {¶ 12} This language was clear and unambiguous. The policy specifically excluded from coverage partnerships not named as an insured. The only named insured under the West American policies was Plum Construction or Plum-Starks Construction. None of them named Plum-Ayer or John Plum as a partner in Plum-Ayer as an insured. Since they were not named as insureds, they were not entitled to coverage as a matter of law.
 {¶ 13} We find no issue of material fact. Construing the evidence most strongly in Plum's favor, we hold that reasonable minds could reach but one conclusion — that Plum was not entitled to coverage under the West American policies. West American was entitled to judgment as a matter of law, and the trial court did not err in granting summary judgment in its favor. See Harlessv. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66,375 N.E.2d 46; Stinespring v. Natorp Garden Stores, Inc. (1998),127 Ohio App.3d 213, 215-216, 711 N.E.2d 1104.
 {¶ 14} We reach a different result as to the Travelers policies. Unlike the West American policies, the Travelers policies did insure Plum-Ayer. Travelers claimed that the policies had expired at the time of the "occurrence." We do not accept Travelers's argument as to what constituted an "occurrence."
 {¶ 15} The Travelers policies provided that "[w]e will paythose sums that the insured becomes legally obligated to pay asdamages because of `bodily injury' or `property damage' towhich this insurance applies." They go on to state, "Thisinsurance applies to `bodily injury' and `property damage" onlyif * * * [t]he `bodily injury' or `property damage' occursduring the policy period." (Emphasis in original.) The policies also defined an "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." They defined "Property Damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it[.]"
 {¶ 16} Several theories exist for determining when coverage is triggered under an occurrence-based liability insurance policy. Under the "manifestation trigger," coverage is triggered when property damage becomes known to the owner. Under the "injury-in-fact trigger," coverage is triggered when the damage first occurs. Under the "exposure trigger," coverage is triggered when the first injury-causing conditions occur. Finally, courts often apply the concept of "continuous trigger" if multiple policies are in effect over a period of time. Westfield Ins. Co.v. Milwaukee Ins. Co., 12th Dist. No. CA-20041-2-298,2005-Ohio-4746, ¶ 10; GenCorp, Inc. v. AIU Ins. Co. (N.D.Ohio 2000), 104 F. Supp.2d 740, 745.
 {¶ 17} Travelers relies heavily on the manifestation trigger and implies that Ohio always follows that trigger. The Ohio Supreme Court has not ruled on the issue, and the law is far from clear. See Owens-Corning Fiberglas Corp. v. Amer. CentennialIns. Co. (C.P. 1995), 74 Ohio Misc.2d 183, 212-214,660 N.E.2d 770; Westfield, supra, at ¶ 10-19; GenCorp, supra, at 745.
 {¶ 18} Travelers relies on Reynolds v. Celina Mut. Ins. Co.
(Feb. 16, 2000), 9th Dist. No. 98CA007268, which it contends is almost factually identical to the present case. In that case, a homeowner had sued a builder over defects in the construction of the home. The builder's insurance company denied coverage because it contended that the occurrence did not take place while the policy was in effect. The court in Reynolds applied a manifestation trigger to an occurrence-based policy. It held that because the damage to the home did not manifest itself during the policy period, no coverage existed.
 {¶ 19} We do not necessarily agree with the Reynolds
court's reasoning. Whether a manifestation trigger or a different trigger will apply depends on the nature of the damage. SeeOwens-Corning, supra, at 212-214; Westfield, supra, at ¶ 10-19; GenCorp, supra, at 745-746. Further, Reynolds differs from the present case in one important respect: In Reynolds the damage manifested itself before the policy was in effect; here it manifested itself long afterward. Compare Cleveland Bd. of Ed.v. R.J. Stickle Internatl. (1991), 76 Ohio App.3d 432, 436-437,602 N.E.2d 353. The timing of the manifestation, in our view, is important. Applying a manifestation trigger in cases such as this presents numerous problems that, in effect, will almost always deny coverage. Courts must "stay close to policy language and employ common sense without arriving at a result that is absurd or that renders coverage under the policies `illusory.'"GenCorp, supra, at 245. Therefore, we decline to apply the manifestation trigger in this case.
 {¶ 20} John Plum was a responsible business person. He properly insured his business entities, including Plum-Ayer, and then he paid his premiums. He believed Plum-Ayer was insured and so did his insurance agent. Then, John Plum did what a reasonable business person would do — he stopped insuring an entity that no longer existed. Using a manifestation trigger, how would these businesses have ever properly insured themselves? To adopt Travelers's position would require business people such as Plum to maintain insurance on entities that no longer exist. Then, the question arises as to how long they would have to maintain insurance on these nonexistent entities. Coverage could arguably have to be maintained indefinitely. Simply put, Travelers's position renders any coverage illusory.
 {¶ 21} A federal court interpreting similar policy language stated that the trigger event under an occurrence-based policy was "the sustaining of actual damage by the complaining party."Trizec Properties, Inc. v. Biltmore Constr. Co., Inc. (C.A.11, 1985), 767 F.2d 810, 812. It specifically rejected an argument that coverage was only triggered when the damage was discovered or manifested itself. It stated, "The potential for coverage is triggered when an `occurrence' results in `property damage.' There is no requirement that the damages `manifest' themselves during the policy period. Rather, it is the damage itself which must occur during the policy period for coverage to be effective." Id. at 813. The court noted that the insurance company was attempting to change the policy into a "claims made" policy where the date of discovery of the damage was relevant. "The language of the policy, however, clearly focuses on the date that damage is sustained and not on the date it `manifests' itself." Id. at 813, fn. 6. Finally, the court stated that to the extent that the insurance company contended that the damage did not occur until it "manifested" itself, "such a contention is simply irrelevant to the task at hand." Id. at 813.
 {¶ 22} We agree with this reasoning. Accord BoardmanPetroleum, Inc. v. Federated Mut. Ins. Co. (C.A.11, 1998),135 F.3d 750, 754, fn. 13; Dow Chem. Co. v. Associated Indem. Corp.
(E.D.Mich. 1989), 724 F. Supp. 474, 485-487. Thus, the date the damage manifested itself in this case was irrelevant. The question becomes, then, how is the date when the damage occurred determined in cases like this?
 {¶ 23} Another court of appeals applied the continuous-trigger approach in a case involving similar facts. In that case, the homeowners discovered water damage in 2003. They filed suit alleging that the damage was caused when the builder negligently constructed the home in 1996. Milwaukee Insurance Company insured the builder until 1998 and Westfield Insurance Company insured the builder afterward. The court rejected Milwaukee's claim that the manifestation trigger applied. It followed a line of cases holding that "where a structure suffers damage of a continuing nature, coverage must be apportioned between the insurance carriers that insured the property during the course of the damage." Westfield, supra, at ¶ 11-16. Thus, the court held that genuine issues of fact existed as to whether any damage occurred during the Milwaukee policy period. Id. at ¶ 19. See, also, Owens-Corning, supra, at 212-214,660 N.E.2d 770.
 {¶ 24} Similarly, we are persuaded that the continuous-coverage trigger applies to cases such as the present case. Issues of fact exist as to what extent the damage to the Remingtons' house occurred during the period the Travelers policy was in effect. Because genuine issues of fact exist for trial, the trial court erred in granting summary judgment in favor of Travelers. See Harless, supra, at 66, 375 N.E.2d 46;Stinespring, supra, at 215-216, 711 N.E.2d 1104. Consequently, we sustain Plum's assignment of error as it relates to the Travelers policy, reverse the trial court's entry of summary judgment in Travelers's favor, and remand the case for further proceedings. We affirm the trial court's entry of summary judgment in favor of West American.
Judgment affirmed in part and reversed in part, and cause remanded.
Hildebrandt and Gorman, JJ., concur.