[Cite as *Granger v. Auto-Owners Ins.*, Slip Opinion No. 2015-Ohio-3279.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-3279

GRANGER ET AL., APPELLEES, *v*. AUTO-OWNERS INSURANCE ET AL.; AUTO-OWNERS (MUTUAL) INSURANCE CO. ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Granger v. Auto-Owners Ins.*, Slip Opinion No. 2015-Ohio-3279.]**

*Insurance—Duty to defend—Intentional-acts exclusion—Inferred-intent doctrine not applicable when the harm is not an inherent result of an intentional act—Emotional distress is not inherent in the nature of housing discrimination.*

(No. 2013-1527—Submitted June 25, 2014—Decided August 18, 2015.)

APPEAL from the Court of Appeals for Summit County, No. 26473, 2013-Ohio-2792.

_____

**PFEIFER, J**.

{¶ 1} In this case, we address whether an umbrella insurance policy's intentional-acts exclusion—through application of the inferred-intent doctrine—

obviates the insurer's duty to defend an insured against claims based on alleged acts of pre-leasing housing discrimination that result in alleged emotional distress. We hold that the particular umbrella policy at issue arguably provides coverage for emotional-distress damages through its coverage for humiliation. We further hold that emotional-distress damages are not inherent in a claim for discrimination and that the inferred-intent doctrine is thus inapplicable in this case.

Factual and Procedural Background

{¶ 2} Steve Granger and Paul Steigerwald, appellees, established a trust together to hold certain assets; one of the assets is a rental property in Akron that they rent to tenants on a month-to-month basis. That property consists of four units: three in the main house and a fourth above a three-car garage that they call a carriage house. Granger refers to himself as "the rules Nazi" and will terminate a lease at the end of the following month if a tenant is too loud. Granger paraphrases a clause in the rental agreement as stating, "[I]f you make noise to disturb other tenants, your month-to-month lease will not be renewed."

{¶ 3} Valerie Kozera alleged that she called Granger on June 7, 2010, to inquire about renting one of the units of the property. She wanted to move closer to her disabled mother. Granger asked Kozera who would be living in the apartment, and she responded that she and her six-year-old son would live there. Granger told Kozera that he does not rent to people with children and ended the phone call. Granger maintains that he did not specifically state that he would not lease to Kozera, but that he told her instead that the apartment "wasn't conducive to children." He said, "I didn't want her—I told her, now, if you come all the way here and then you do rent, I said, and there's noise, I said, you can only be here for one month. I tell everybody that."

{¶ 4} Kozera contacted the Fair Housing Contact Service, Inc. ("FHCS"), which investigated Kozera's claims by using trained testers to interact with

2

Granger. One tester inquired about the property by e-mail, and Granger replied, "Truely [sic] a lovely and large apartment and in a very well keep [sic] apartment house. No pets or children." Granger later sent an additional e-mail to the same tester, stating, "Yes it is still available as I am selective as to who [sic] I rent to and I run a background check on any possible tenant, just so you know. It is an adult apartment house so it is quite [sic] and very will keep [sic] with no children or pets permitted." He sent a proposed lease to at least one tester; one of its terms was "No children or pets are permitted—period." Further, FHCS related that Granger told only an African-American tester that he ran background checks on prospective tenants because "he didn't want a rapist in the building"; he did not make the same comment to a Caucasian tester.

{¶ 5} Based on information from Kozera and the testers, FHCS contended that Granger had discriminated against Kozera, an African-American, on the basis of familial status and race in violation of 42 U.S.C. 3604 and R.C. 4112.02(H). In March 2011, Kozera and FHCS filed a complaint in federal court against Granger and Steigerwald, individually and in their capacities as trustees of the trust. Kozera claimed that she had "experienced out of pocket costs and emotional distress as a result of Defendants' conduct"; FHCS alleged that it had "expended its resources and was harmed in its mission by Defendants' conduct."

{¶ 6} There was potential coverage under two separate Auto-Owners Insurance Group policies. Appellant Auto Owners (Mutual) Insurance Company covered Granger, Steigerwald, and their trust under a dwelling policy that included landlord-liability coverage. The second policy is the one at issue in this appeal; it is an umbrella policy issued by appellant Owners Insurance Company under which Granger is the named insured. For ease of reference, we refer to appellants collectively as "Auto-Owners."

{¶ 7} On May 18, 2011, Granger and Steigerwald forwarded the complaint to their insurance agent at the Church Agency. The agency contacted Auto-

Owners, seeking coverage under the dwelling policy only. On June 8, 2011, Auto-Owners sent a letter to Granger and Steigerwald explaining that the dwelling policy did not provide coverage to them. Auto-Owners pointed out that the discrimination lawsuit did not allege any bodily injury, property damage, or personal injury that was covered by the policy. Auto-Owners stated that discrimination did not fall under the policy's definition of personal injury. The letter quoted the definition of "personal injury" from the policy:

> c. Personal injury means:
>
> (1) libel, slander, or defamation of character;
>
> (2) false arrest, detention or imprisonment, or malicious prosecution;
>
> (3) invasion of privacy; or
>
> (4) wrongful eviction or wrongful entry.

{¶ 8} The letter denying coverage did not mention the umbrella policy. After the denial under the dwelling policy, Granger's insurance agent, Michael Coudriet, determined that the agency should submit a claim to Auto-Owners on Granger's behalf under the umbrella policy. The agency submitted the claim on June 9, 2011. Granger and Steigerwald did not hear from Auto-Owners on the question of coverage under the umbrella policy.

{¶ 9} On July 11, 2011, Granger and Steigerwald settled the federal case with Kozera and FHCS for $32,500. Separate payments went to the two plaintiffs: $5,000 to Kozera and $27,500 to FHCS.

{¶ 10} On July 22, 2011, appellees sued Auto-Owners, the Church Agency, Inc., and Mike Coudriet for claims relating to Auto-Owners' failure to provide coverage. In this appeal, we address only appellees' claim regarding Auto-Owners' duty to defend Granger under the umbrella policy.

**{¶ 11}** The umbrella policy states:

> DEFENSE—SETTLEMENT
>
> With respect to any occurrence:
>
> (a) not covered by underlying insurance; but
>
> (b) covered by this policy except for the retained limit;
>
> we will:
>
> (a) defend any suit against the insured at our expense, using lawyers of our choice. * * *
>
> (b) investigate or settle any claim or suit as we think appropriate.

**{¶ 12}** The policy also states that Auto Owners "will pay on behalf of the insured the ultimate net loss in excess of the retained limit which the insured becomes legally obligated to pay as damages because of personal injury."

**{¶ 13}** The definition of "personal injury" is broader in the umbrella policy than in the dwelling policy—it includes particular damages rather than only particular causes of action:

> "Personal injury" means:
>
> (a) bodily injury, sickness, disease, disability or shock;
>
> (b) mental anguish or mental injury;
>
> (c) false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution or humiliation; and
>
> (d) libel, slander, defamation of character or invasion of rights of privacy;
>
> including resulting death, sustained by any person * * *.

**{¶ 14}** The umbrella policy excludes coverage for intentional acts, stating, "We do not cover * * * [p]ersonal injury or property damage expected or intended by the insured."

**{¶ 15}** Appellees filed a motion for summary judgment in the trial court on the issue of Auto-Owners' duty to defend Granger under the umbrella policy. Auto-Owners filed a motion seeking summary judgment on its duty to defend and indemnify the appellees under the policies. The trial court denied appellees' motion and granted that of Auto-Owners.

**{¶ 16}** Appellees appealed, arguing that the trial court erred in granting Auto-Owners' motion for summary judgment on the issue of its duty to defend Granger under the umbrella policy. The Ninth District Court of Appeals reversed. The appellate court pointed out that "Auto–Owners defined personal injury both in terms of certain claims, such as malicious prosecution, and in terms of resulting harms, such as humiliation or mental anguish." 2013-Ohio-2792, 991 N.E.2d 1254, ¶ 13. The court concluded that because Kozera claimed that she had suffered emotional distress, "she arguably suffered humiliation, which is a personal injury covered under the policy," and that, therefore, "it would appear that the federal complaint alleges a personal injury as contemplated by the umbrella policy." *Id*. at ¶ 14.

**{¶ 17}** The appellate court next addressed the policy's intentional-acts exclusion. The court drew a distinction between Granger's intent to discriminate and his intent to cause personal injury. The court held that the argument that the exclusion applies because Granger intended the discrimination "ignores the plain language of the policy"; instead, the court reasoned, "[t]he relevant inquiry under the exclusion portion of the policy * * * is whether Mr. Granger expected or intended Ms. Kozera to be humiliated by his conduct." *Id*. at ¶ 15. The court found that Auto-Owners had not yet made an argument on that point, let alone introduced evidence. *Id*. The court also rejected the idea that the intent to injure

6

could be inferred from Granger's acts: " 'An insurer's motion for summary judgment may be properly granted when intent may be inferred as a matter of law. In cases such as this one, where the insured's act does not necessarily result in harm, we cannot infer an intent to cause injury as a matter of law.' " *Id.*, quoting *Allstate Ins. Co. v. Campbell*, 128 Ohio St.3d 186, 2010-Ohio-6312, 942 N.E.2d 1090, ¶ 59.

{¶ 18} The court thus held that "Auto-Owners [was] not entitled to summary judgment on the issue of whether it breached the contract by failing to defend Mr. Granger pursuant to the umbrella policy." *Id.*

{¶ 19} The cause is before this court upon the allowance of Auto-Owners' discretionary appeal.

Law and Analysis

{¶ 20} An insurance policy is a contract; in interpreting contracts, courts must give effect to the intent of the parties, and that intent is presumed to be reflected in the plain and ordinary meaning of the contract language. *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St.3d 306, 2007-Ohio-4917, 875 N.E.2d 31, ¶ 7. In this case, there are several factors in play that affect how we interpret the policy at issue.

{¶ 21} First, this case concerns the duty to defend. The duty of an insurer to defend an insured is a broad duty—broader than the duty to indemnify—that is absolute when the complaint contains any allegation that could arguably be covered by the insurance policy. *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 13. An exception to the absolute duty exists when all the claims are each clearly and indisputably outside the coverage. *Id.* Another way of stating the exception is that the insurer need not provide a defense if there is no set of facts alleged in the complaint which, if proven true, would invoke coverage for any claim. *Cincinnati Indemn. Co. v. Martin*, 85 Ohio St.3d 604, 605, 710 N.E.2d 677 (1999).

**{¶ 22}** In this appeal, we are also interpreting a policy exclusion; " ' "an exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded." ' "  (Emphasis sic.)  *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, 948 N.E.2d 931, ¶ 11, quoting *Sharonville* at ¶ 6, quoting *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096 (1992).

**{¶ 23}** Finally, the policy at issue is an umbrella policy:

> "An umbrella policy is a policy which provides excess coverage beyond an insured's primary policies."  *Midwestern Indemn. Co. v. Craig* (1995), 106 Ohio App.3d 158, 164, 665 N.E.2d 712.  See, also, *Cleveland Builders Supply Co. v. Farmers Ins. Group of Cos*. (1995), 102 Ohio App.3d 708, 657 N.E.2d 851. Umbrella policies are different from standard excess insurance policies, since they provide both excess coverage ("vertical coverage") and primary coverage ("horizontal coverage").  *Am. Special Risk Ins. Co. v. A–Best Prods., Inc*. (1997), 975 F.Supp. 1019, 1022.  "The vertical coverage provides additional coverage above the limits of the insured's underlying primary insurance, whereas the horizontal coverage is said to 'drop down' to provide primary coverage for situations where the underlying insurance provides no coverage at all."  Id. at 1022.

*Cincinnati Ins. Co.*, 115 Ohio St.3d 306, 2007-Ohio-4917, 875 N.E.2d 31, ¶ 5.

**{¶ 24}** The umbrella policy in this case contained a more expansive definition of "personal injury" than did the dwelling policy.  Its inclusion of coverage for particular harms rather than just for particular causes of action

creates the crux of the case: did the umbrella policy's inclusion of coverage for humiliation give rise to a duty to defend under the particular facts of this case?

{¶ 25} We address Auto-Owners' propositions of law in reverse order. We will first determine whether Kozera's claim for "emotional distress" damages is within the policy's coverage for humiliation. Then, we will determine whether any potential duty to defend is obviated by the policy's intentional-acts exclusion.

*Emotional Distress as a Form of Humiliation*

{¶ 26} Auto-Owners' second proposition of law reads as follows:

> A claim for emotional distress does not constitute "humiliation" sufficient to trigger a duty to defend under an umbrella policy of insurance. The duty to defend can only be triggered by actual facts, not an inference of potential recoverable damages where no covered conduct is even alleged.

{¶ 27} The issue is whether Kozera's allegation that she suffered "emotional distress" was sufficient to trigger Auto-Owners' duty to defend under the umbrella policy. The umbrella policy in this case includes coverage for particular harms— "sickness, disease, disability or shock; * * * mental anguish or mental injury [and] humiliation." We hold that Kozera's claim of emotional distress invoked coverage under the policy.

{¶ 28} First, emotional-distress damages were available to Kozera under the Fair Housing Act, 42 U.S.C. 3601 et seq.:

> Courts have held, under the Fair Housing Act, that plaintiffs may recover, as compensatory damages, out-of-pocket expenses for property damage and damages for emotional distress. * * * The Sixth Circuit has used a "totality of the circumstances" standard in

evaluating a plaintiff's right to such damages in housing discrimination cases.

*Byrd v. Brandeburg*, 932 F.Supp. 198, 200 (N.D.Ohio 1996).

{¶ 29} In *Bishop v. Pecsok*, 431 F.Supp. 34, 38 (N.D.Ohio 1976), another case involving discrimination in housing, the court held that "[i]n calculating the amount of compensatory damages this Court is required to consider not only out-of-pocket expenses, but also the emotional distress and humiliation suffered by plaintiffs." Under R.C. 4112.99, "the availability of 'damages' and 'other appropriate relief' fairly encompasses an award for pain and suffering, mental anguish, humiliation, and the like." *Keys v. U.S. Welding, Fabricating & Mfg., Inc.*, N.D.Ohio No. CV91-0113, 1992 WL 218302, at *9 (Aug. 26, 1992).

{¶ 30} Does Kozera's claim of emotional distress encompass humiliation? The duty to defend is broad and is not dependent on magic words. We find that a broad allegation of emotional distress arguably contains an allegation of humiliation. As the appellate court noted, "Emotional distress has been defined as '[a] highly unpleasant mental reaction (such as anguish, grief, fright, *humiliation*, or fury) that results from another person's conduct[.]' (Emphasis added.) Black's Law Dictionary 563 (8th Ed.2004)." 2013-Ohio-2792, 991 N.E.2d 1254, ¶ 14. Humiliation is one of the particular reactions that falls under the umbrella of emotional distress.

{¶ 31} The policy at issue provides coverage for certain harms, including humiliation. Humiliation is a recognized injury in housing-discrimination cases. Humiliation is included within the ordinary meaning of "emotional distress." Kozera alleged emotional distress. That was enough to establish that Kozera's allegation could be covered under the policy.

Intentional-Acts Exclusion and Inferred Intent

**{¶ 32}** Appellants' first proposition of law raises the question of whether the policy's exclusion for intentional acts obviates coverage for Granger even if Kozera's allegation of emotional distress was otherwise enough to trigger the duty to defend. The appellants' first proposition of law reads, "Discriminatory intent is inferred as a matter of law for purposes of an intentional act exclusion under an umbrella policy of insurance on a claim for pre-leasing housing discrimination."

**{¶ 33}** Auto-Owners seeks application of the inferred-intent doctrine in this case. The policy in this case, like most other insurance policies, contains an intentional-acts exclusion, which relieves the obligation of Auto-Owners to provide coverage when the harm alleged is intentionally caused by the insured. Under the inferred-intent doctrine, "when there is no evidence of direct intent to cause harm and the insured denies the intent to cause any harm, the insured's intent to cause harm will be inferred as a matter of law in certain instances." *Campbell*, 128 Ohio St.3d 186, 2010-Ohio-6312, 942 N.E.2d 1090, ¶ 9, citing *Gearing v. Nationwide Ins. Co.,* 76 Ohio St.3d 34, 36, 665 N.E.2d 1115 (1996), paragraph one of the syllabus. Auto-Owners argues that it can be inferred as a matter of law from the nature of Granger's act—pre-leasing housing discrimination—that Granger intended to cause Kozera's personal injuries; thus, since the policy "do[es] not cover * * * [p]ersonal injury or property damage expected or intended by the insured," there would be no duty to provide a defense or indemnity. Applying the inferred-intent doctrine would relieve Auto-Owners of the burden of proving intent through evidence: the evidence of intent would be inherent in Granger's act, there would be no genuine issue of fact regarding the issue, and thus summary judgment would be appropriate.

**{¶ 34}** *Campbell* is the most recent of this court's decisions on the doctrine of inferred intent, and it discusses the development of the doctrine in Ohio. *Campbell* contains two important holdings. First, *Campbell* recognizes

that although this court has inferred intent only in cases in which would-be insureds committed particularly heinous acts—the murder of a child in *Preferred Risk Ins. Co. v. Gill,* 30 Ohio St.3d 108, 114–115, 507 N.E.2d 1118 (1987), and the molestation of children in *Gearing*—"[a]s applied to an insurance policy's intentional-act exclusion, the doctrine of inferred intent is not limited to cases of sexual molestation or homicide." *Campbell* at paragraph one of the syllabus. Second, this court held that "the doctrine of inferred intent applies only in cases in which the insured's intentional act and the harm caused are intrinsically tied so that the act has necessarily resulted in the harm." *Id.* at paragraph two of the syllabus. In making that decision, this court considered but declined to adopt the "substantially certain" test in inferred-intent cases. Under that test, a harm that was substantially certain to result from an intentional act would fall under an intentional-acts exclusion of an insurance policy. Instead, this court held that for an act to fall within the doctrine, the harm must be the inherent result of an intentional act. *Id.* at ¶ 56.

{¶ 35} In *Campbell*, the underlying act by the potential insureds was the placement of a Styrofoam target deer on a hilly country road at night. *Id.* at ¶ 2. A group of youths intentionally placed the deer in the roadway to watch the reactions of motorists. *Id.* Some motorists successfully avoided the fake deer, but one driver lost control of his vehicle and crashed; he and his passenger suffered serious injuries. *Id.* This court held that the serious harm that resulted from the act of placing the deer in the roadway was not "intrinsically tied so that the act has necessarily resulted in the harm," *id.* at ¶ 48, and remanded the case to the trial court. There, the trier of fact would weigh the facts in evidence to determine whether the boys intended or expected harm. *Id.* at ¶ 59. Any intent to harm would be determined by the trier of fact rather than inferred as a matter of law.

{¶ 36} "In order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself

12

was expected or intended." *Physicians Ins. Co. of Ohio v. Swanson*, 58 Ohio St.3d 189, 569 N.E.2d 906 (1991), syllabus. We agree with the court below that "[t]he relevant inquiry under the exclusion portion of the policy is whether the *personal injury* was expected or intended. Thus, the appropriate question to ask is whether Mr. Granger expected or intended Ms. Kozera to be humiliated by his conduct." (Emphasis sic.) 2013-Ohio-2792, 991 N.E.2d 1254, ¶ 15.

**{¶ 37}** We do not find that humiliation is so intrinsically tied to pre-leasing discrimination that Granger's act necessarily resulted in the harm suffered by Kozera. Although emotional-distress damages are available to victims of housing discrimination, such damages are not automatically awarded:

> We have long held that emotional distress caused by housing discrimination is a compensable injury under the Fair Housing Act. See *Seaton v. Sky Realty Co.*, 491 F.2d 634, 636-38 (7th Cir.1974). However, a court may not presume emotional distress from the fact of discrimination. A plaintiff must actually prove that he suffers from emotional distress and that the discrimination caused that distress. Cf. *Carey v. Piphus*, 435 U.S. 247, 263-64, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978) (holding in a procedural due process case that "neither the likelihood [of emotional distress] nor the difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury actually was caused"); *Spence v. Board of Education*, 806 F.2d 1198, 1200-01 (3d Cir.1986) (applying the same principle in a first amendment case).

*United States v. Balistrieri*, 981 F.2d 916, 931 (7th Cir.1992).

**{¶ 38}** Is this case of a kind with *Gill* and *Gearing*, cases in which insureds pled guilty to criminal acts of violence against children? We determine that it is not. Both Gill and Gearing, in the civil cases that followed their criminal convictions, claimed that they did not intend the civil injuries associated with their criminal acts. Those claims rang hollow, due to the nature of their acts. This court connected the civil claims to the underlying criminal acts, which necessarily included the intent to harm.

**{¶ 39}** Here, Granger does not stand convicted of a criminal act that includes intent to harm as an element. Although he claims that he did not know he was violating the law, he did discriminate against Kozera. But Granger does not claim coverage for the discrimination; he instead claims coverage for the personal injury—the humiliation—that allegedly followed the discrimination. Included in the plain language of this umbrella policy is coverage for certain discrete injuries. Our only concern here is a specific harm, humiliation, and whether Granger intended to cause it.

**{¶ 40}** Although *Campbell* holds that the inferred-intent doctrine is not limited to cases of murder or sexual molestation, it also warns that "courts should be careful to avoid applying the doctrine in cases where the insured's intentional act will not necessarily result in the harm caused by the act." *Campbell*, 128 Ohio St.3d 186, 2010-Ohio-6312, 942 N.E.2d 1090, at ¶ 48. The policy excludes coverage when "the personal injury * * * was expected or intended." We cannot say that the personal injury was intended in this case, nor can we say that emotional distress is inherent in the very nature of housing discrimination.

**{¶ 41}** We note that Granger did not appeal the holding below that there was no coverage under the dwelling policy. The umbrella policy was more expansive, but even so, it arguably covers just one aspect of the damages suffered by Kozera. That is all that is necessary, however, to give rise to the duty to defend. Meanwhile, under this ruling, appellants still have the ability to

14

demonstrate to the trier of fact that Granger intended to cause humiliation to Kozera. In this instance, the inferred-intent doctrine does not remove that burden.

{¶ 42} Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and LANZINGER, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL and KENNEDY, JJ., dissent.

_____

**KENNEDY, J., dissenting.**

{¶ 43} Respectfully, I dissent. I would hold that appellant Auto Owners (Mutual) Insurance Company ("Auto-Owners") had no duty to defend appellee Steve Granger against Valerie Kozera's discrimination lawsuit because the Auto-Owners' umbrella policy excluded from coverage those injuries that are expected or intended by the insured. Accordingly, I would reverse the judgment of the court of appeals and reinstate the trial court's order of summary judgment in favor of Auto-Owners.

*Insurance Coverage*

{¶ 44} "The duty [of the insurer] to defend [the insured] is determined by the scope of the allegations in the [plaintiff's] complaint." *Ward v. United Foundries, Inc.*, 129 Ohio St.3d 292, 2011-Ohio-3176, 951 N.E.2d 770, ¶ 19, citing *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 19. "If the allegations state a claim that potentially or arguably falls within the liability insurance coverage, then the insurer must defend the insured in the action." *Id.* When the policy excludes coverage for bodily injury or property damage that is expected or intended by the insured, the insured's conduct is not covered by the policy and the insurer has no duty to defend. *Preferred Risk Ins. Co. v. Gill,* 30 Ohio St.3d 108, 113, 507 N.E.2d 1118 (1987). However, even "when there is no evidence of direct intent to cause harm and the insured denies any intent to cause harm, the insured's intent to cause

harm will be inferred as a matter of law in certain instances" (the "inferred-intent doctrine"). *Allstate Ins. Co. v. Campbell*, 128 Ohio St.3d 186, 2010-Ohio-6312, 942 N.E.2d 1090, ¶ 9, citing *Gearing v. Nationwide Ins. Co.*, 76 Ohio St.3d 34, 665 N.E.2d 1115 (1996), paragraph one of the syllabus.

{¶ 45} In *Campbell*, we "clarif[ied] that the doctrine of inferred intent applies only in cases in which the insured's intentional act and the harm caused are *intrinsically tied* so that the act has necessarily resulted in the harm." (Emphasis added.) *Id*. at ¶ 56. Justice O'Donnell disagreed with the majority's adoption of the "intrinsically tied" test. *Id.* at ¶ 76-78 (O'Donnell, J., concurring in part and dissenting in part). He opined that the majority improperly discounted precedent that had established a "substantial certainty" test for determining when inferred intent applied. *Id*. at ¶ 77, citing *Gearing* at 39 and *Physicians Ins. Co. v. Swanson*, 58 Ohio St.3d 189, 193, 569 N.E.2d 906 (1991). While I agree with Justice O'Donnell's concerns, I also recognize that the "intrinsically tied" test is the law after *Campbell*.

*Discrimination and Harm Are "Intrinsically Tied"*

Discrimination is not simply dollars and cents * * *; it is the humiliation, frustration, and embarrassment that a person must surely feel when he is told that he is unacceptable as a member of the public because of his race or color. It is equally the inability to explain to a child that regardless of education, civility, courtesy, and morality he will be denied the right to enjoy equal treatment, even though he be a citizen of the United States and may well be called upon to lay down his life to assure this Nation continues.

*Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 292, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964) (Goldberg, J., concurring), citing S.Rep. No. 88-872, at 16 (1964).

**{¶ 46}** Courts have recognized that injury is inherent[1] in the act of discrimination. *See Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir.1984) ("injury may be presumed from the fact of discrimination and violations of the fair housing statutes"); *Innovative Health Sys., Inc. v. White Plains,* 931 F.Supp. 222, 238 (S.D.N.Y.1996) ("A general allegation of discrimination embraces its inherent harms, such as stigma, insult, and the inability to receive the same opportunities as those who do not face discrimination"); *see also Feurer v. Curators of Univ. of Missouri,* E.D. Missouri No. 4:06CV750 HEA, 2006 WL 2385260 (Aug. 17, 2006), * 2. I agree.

### *Auto-Owners Had No Duty to Defend*

**{¶ 47}** The insurance policy at issue is Kozera's umbrella policy provided by Auto-Owners, which excludes from coverage "[p]ersonal injury or property damage expected or intended by the insured."

**{¶ 48}** Fair Housing Contact Service, Inc. ("FHCS"), a nonprofit organization that promotes fair housing, filed a discrimination claim on behalf of Kozera against Granger in federal court alleging a violation of the Fair Housing Act, 42 U.S.C. 3601 et seq., which prevents discrimination in housing based on race and familial status. 42 U.S.C. 3604. The complaint alleged that Kozera is African-American and has a minor child. It also alleged that when Kozera called Granger about renting a house she had seen on Craigslist, Granger asked who would be living at the house and then said that "he would not rent the Premises to

---

[1] "Inherent" and "intrinsic" are synonymous. "Inherent" means "structual or involved in the constitution or essential character of something: belonging by nature or settled habit," *Webster's Third New International Dictionary* 1163 (1986), while "intrinsic" means "belonging to the inmost constitution or essential nature of a thing:  essential or inherent and not merely apparent, relative, or accidental," *id*. at 1186.

anyone with children." In his deposition, Granger denied that he refused to rent the house to Kozera.

{¶ 49} The complaint alleged that as part of its investigation of Kozera's case, FHCS sent testers to inquire about renting housing from Granger. Granger allegedly made racially discriminatory remarks toward the testers.

{¶ 50} The complaint claims discrimination. *See* 42 U.S.C. 3604. Because discrimination and injury are intrinsically tied, the inferred-intent doctrine applies, which means that when Granger acted in a discriminatory manner, he intended injury as a matter of law, for the purpose of determining insurance coverage. Therefore, Auto-Owners had no duty to defend Granger because the umbrella policy excludes from coverage an "injury" that is "expected or intended by the insured."

{¶ 51} Accordingly, I would reverse the judgment of the court of appeals and reinstate the trial court's grant of summary judgment in favor of Auto-Owners. I respectfully dissent.

O'DONNELL, J., concurs in the foregoing opinion.

_____

McNeal, Schick, Archibald & Biro Co., L.P.A., Brian T. Winchester, and Patrick J. Gump, for appellants.

Thomas C. Loepp Law Offices Co. and Thomas C. Loepp, for appellees.

_____