[Cite as *Lightening Rod Mut. Ins. Co. v. Southworth*, 2016-Ohio-3473.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| LIGHTENING ROD MUTUAL INSURANCE CO.,[1] | : | Case No. 15CA3704 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| ROBERT SOUTHWORTH, DBA BOB'S HOME SERVICE, ET AL., | : | |
| Defendants-Appellants. | : | RELEASED 06/16/2016 |

APPEARANCES:

Amanda M. Leffler and Lucas M. Blower, Brouse McDowell, L.P.A., Akron, Ohio, and Caroline L. Marks, Brouse McDowell, L.P.A., Cleveland, Ohio, for defendant-appellant CMH Homes, Inc., d/b/a Luv Homes.

Ronald A. Rispo and Robert E. Goff, Jr., Weston Hurd LLP, Cleveland Ohio, and David L. Jarrett, Western Reserve Mutual Casualty Company, Wooster, Ohio, for plaintiff-appellee Lightning Rod Mutual Insurance Company.

Hoover, J.

{¶1}    CMH Homes, Inc., d/b/a Luv Homes ("CMH") appeals the Scioto County Common Pleas Court's decision to grant Lightning Rod Mutual Insurance Company ("Lightning Rod") summary judgment in Lightning Rod's declaratory judgment action. In this case, Lightning Rod sought a declaratory judgment that it was not obligated to provide insurance coverage for claims asserted against defendant Bob's Home Services, LLC ("Bob's") in a separate lawsuit, and subsequent arbitration demand. In particular, Lightning Rod denied that it

---

[1] It appears the correct spelling is Lightning; however, this Court uses the caption employed by the trial court.

was obligated to defend and indemnify Bob's under a commercial general liability insurance policy (the "Policy") for CMH's claims asserted against Bob's. After competing cross-motions for summary judgment were filed and briefed by Lightning Rod and CMH, the trial court determined that coverage did not exist under the Policy and thus granted Lightning Rod's motion. On appeal, CMH contends that coverage does exist under the Policy, that the trial court erred in granting summary judgment in favor of Lightning Rod, and that it should be awarded summary judgment. CMH also contends that the trial court erred by denying its motion to amend its answer under Civil Rule 15. For the reasons discussed more fully below, we conclude that Lightning Rod was entitled to judgment as a matter of law. We also conclude that CMH's remaining assignment of error is rendered moot. Accordingly, we affirm the trial court's judgment.

## I. Facts and Procedural History

### A. The Property Damage, Repair Efforts, and the Beattie's Complaint

{¶2}    On or about November 12, 2007, Jonathan and Heather Beattie (the "Beatties") entered into a purchase agreement with CMH for the purchase of a new mobile home manufactured by Skyline Corporation ("Skyline"). According to the Beatties, CMH failed to properly install the home as required by Skyline's installation instructions and by law. Due to the alleged "substandard, defective, and/or negligent manufacture, delivery, and installation," the home began experiencing structural problems of a continuing nature, including cracks in the drywall and the ceiling at the marriage line. Specifically, the structural defects first manifested in early 2008, almost immediately after taking occupancy, and continued through 2014 and beyond.

{¶3}    Beginning in January 2008, CMH and Skyline began making several attempts to repair the problems. Despite the repair efforts, the problems persisted and reoccurred throughout 2008 and beyond.

{¶4}    The Beatties filed a complaint against Skyline, CMH, and Vanderbilt Mortgage and Finance, Inc. in Mason County, West Virginia, on June 15, 2012. The lawsuit was removed to federal court on July 3, 2012. The Beatties sought money damages for the alleged property damage under multiple theories of liability.

**B. CMH's Third-Party Complaint against Bob's and Subsequent Arbitration Demand**

{¶5}    During the course of the Beattie lawsuit, CMH filed a third-party complaint against Bob's– alleging that it was the company that actually performed the installation of the Beatties' home, and seeking indemnification and contribution from Bob's. CMH argued that Bob's provided the installation services under an Independent Contractor Application and Agreement  (the "Independent Contractor Agreement") between it and CMH; and that the Independent Contractor Agreement explicitly provided that Bob's would fully defend and indemnify CMH for any claims arising from Bob's work. The Independent Contractor Agreement also contained an arbitration provision; and required that Bob's obtain commercial general liability insurance as a condition of contracting with CMH. Bob's moved to enforce the arbitration provision, resulting in the dismissal of CMH's third-party complaint. Thereafter, CMH commenced arbitration proceedings against Bob's and asserted claims including negligence, breach of contract, and express and implied indemnity.

**C. The Lightning Rod Policy**

**1. Procurement of the Policy**

{¶6}    Lightning Rod first issued the Policy at issue, a commercial general liability policy, for the period November 26, 2008, to November 26, 2009. The Policy was purchased from Agent Catherine Eisnaugle in November 2008. The Policy's declaration page identifies "Southworth Robert" an "individual" as the named insured, and describes the business as "excavating/concrete". However, a certificate of insurance, issued at the time of inception, identifies "Robert Southworth dba Bob's Home Service" as the named insured. The Policy was renewed annually, three times, remaining in effect until November 26, 2012.

### 2. Relevant Terms of the Policy

{¶7}    Lightning Rod issued the Policy having limits of liability of $1,000,000 per occurrence, and $2,000,000 in the aggregate. The Policy provides coverage as follows:

SECTION 1 – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. * * *

b. This insurance applies to "bodily injury" and "property damage" only if:[2]

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II -  Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period. * * *

{¶8}    The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Paragraph 1. of Section II - Who is An Insured – indicates that if an individual is designated in the declarations as the insured, then the individual and their spouse are insureds, "but only with respect to the conduct of a business of which [the individual is] the sole owner." Paragraph 3. of Section II - Who is An Insured – indicates that "[n]o person or organization is an insured with respect to the conduct of

---

[2] Section 1(A)(1)(b) is commonly known as a "loss in progress" or "known risk" clause. *Hastings Mut. Ins. Co. v. Village Communities Real Estate, Inc.*, 10th Dist. Franklin No. 14AP-35, 2014-Ohio-2916, ¶ 16, citing *Ohio Cas. Ins. Co. v. Mansfield Plumbing Prods., LLC*, 5th Dist. Ashland No. 2011-COA-009, 2011-Ohio-4523, ¶ 10.

any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations." The Policy also contains a number of exclusions, several of which Lightning Rod contends are applicable to the claims at issue herein.

### D. The Insurance Claim with Lightning Rod

{¶9}    Bob's claimed that it did not know about the alleged issues at the Beatties' home until it received service of CMH's third-party complaint in August 2013. Around November 2013, Bob's tendered the claim to Lightning Rod and demanded a defense under the Policy. One month later, Lightning Rod assigned counsel to defend Bob's subject to a reservation of rights. Subsequently, Lightning Rod issued a letter purporting that Bob's did not qualify for coverage under the Policy, and announcing its intent to "file a declaratory judgment action asking the Court to determine the rights and obligations of the parties to the insurance contract * * *."

### E. The Declaratory Judgment Action and Resulting Summary Judgment

{¶10}  On July 7, 2014, Lightning Rod initiated the case sub judice by filing its complaint for declaratory judgment against Robert Southworth dba Bob's Home Services ("Southworth")[3], Bob's, and CMH, seeking a declaration that it had no duty to defend or indemnify Bob's under the Policy for the claims brought by CMH against Bob's in the Beattie lawsuit. In its answer, CMH denied Lightning Rod's allegations. Southworth and Bob's did not file answers.

{¶11}  Lightning Rod moved for summary judgment on September 10, 2014. In its motion, Lightning Rod argued that it had no coverage obligations because, inter alia: (1) the Policy listed "Southworth Robert", as the named insured, not "Bob's Home Services, LLC", and

---

[3] There is conflicting evidence as to whether Southworth is the sole member of Bob's, or whether Southworth and his wife are both members.

the policy excludes current or past partnerships, joint ventures and limited liability companies not described in the declarations; (2) the alleged "occurrence" happened prior to the policy period; (3) the defects were known to Skyline, CMH, and Southworth before Lightning Rod issued the Policy to Southworth; (4) the loss in progress provision barred coverage; (5) there was no "occurrence" within the meaning of the Policy; and (6) certain exclusions applied.

{¶12}  CMH moved for a continuance under Civil Rule 56(F), so it could conduct discovery necessary to allow it a fair opportunity to respond, including discovery relating to whether the parties intended Bob's to be included as a named insured. Lightning Rod opposed the motion for continuance, contending, in part, that CMH's "argument about reformation [was] without merit because Southworth [had] not sought reformation as an affirmative defense or in a counterclaim." The trial court ultimately granted CMH's motion for continuance.

{¶13}  On January 26, 2015, Lightning Rod filed a supplemental brief in support of its motion for summary judgment. The supplemental brief included new exhibits incorporating excerpts from the depositions of Southworth and Eisnaugle taken in December 2014. On March 27, 2015, CMH filed its cross-motion for summary judgment and filed a combined memorandum in opposition to Lightning Rod's motion and in support of its cross-motion. CMH argued in its cross-motion for summary judgment that coverage existed because: (1) there was a mutual or unilateral mistake of fact requiring reformation of the Policy to include Bob's as an insured; (2) property damage occurred during the policy period, thereby triggering coverage under the Policy; (3) the loss in progress provision in the Policy did not bar coverage; and (4) there was an "occurrence" within the meaning of the Policy. Thereafter, both parties filed reply briefs.

{¶14}  In its reply, Lightning Rod reasserted that CMH could not raise reformation and mistake because CMH had not pleaded them in its answer. CMH then, on May 21, 2015, moved

for leave to file an amended answer to include the additional defenses of mistake and

reformation pursuant to Civil Rule 15(A). Lightning Rod responded in opposition; and CMH

filed a reply.

{¶15}  On June 2, 2015, the trial court held a hearing at which the parties presented oral

argument regarding the cross-motions for summary judgment and the motion to amend the

answer. On June 11, 2015, the trial court entered summary judgment in favor of Lightning Rod,

noting as follows:

> The activities described in the third party complaint were performed by
>
> Bob's Home Services LLC on or about November 12th, 2007, so the events which
>
> occurred were more than twelve months before the policy was issued. The Court
>
> further finds that the only name [sic] insured is Robert Southworth. The policy
>
> expressly prohibits coverage for the conduct of any current or past partnership,
>
> joint venture or limited liability company that is not shown or named as an
>
> insured in the declarations, and therefore, it excludes any coverage for Bob's
>
> Home Services LLC or for Robert Southworth previously DBA as a limited
>
> liability company.

> Therefore, the occurrences happened prior to the Apple [sic] policy period.
>
> They are not covered by the policy issued by Lightening [sic] Rod. Also the claim
>
> was known to Skyline Homes and CMH Homes Incorporated before Lightening
>
> [sic] Rod policy was issued to Robert Southworth. Since the work was performed
>
> by Bob's Home Services LLC, it was outside the policy period, defects were
>
> discovered within 12 months of the work and were known to Robert Southworth

before the issuance of the Lightening [sic] Rod casualty policy on November 26th,

2008, and these events and occurrences do not qualify for coverage.

It is from this judgment entry that CMH filed its notice of appeal. The trial court never did

expressly rule on CMH's motion for leave to amend its answer pursuant to Civil Rule 15(A).

## II. Assignments of Error

{¶16} CMH assigns the following errors for our review:

First Assignment of Error:

> THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN
> FAVOR OF LIGHTNING ROD MUTUAL INSURANCE COMPANY AND
> DENYING SUMMARY JUDGMENT TO CMH HOMES, INC.

Second Assignment of Error:

> THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING CMH
> HOMES, INC. LEAVE TO FILE AN AMENDED ANSWER TO ADD THE
> DEFENSES OF MISTAKE AND REFORMATION.

## III. Law and Analysis

{¶17} In its first assignment of error, CMH argues that the trial court erred by granting

summary judgment in favor of Lightning Rod and by denying it summary judgment.

Specifically, CMH contends that coverage exists under the Policy, thus obligating Lightning Rod

to defend and indemnify Bob's for CMH's claims asserted against Bob's in the underlying

Beattie litigation.

### A. Summary Judgment Standard of Review and Rules of Insurance Policy Construction

{¶18}  We review the trial court's decision on a motion for summary judgment de novo.

*Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 12. Accordingly, we

afford no deference to the trial court's decision and independently review the record and the

inferences that can be drawn from it to determine whether summary judgment is appropriate.

*Harter v. Chillicothe Long-Term Care, Inc.*, 4th Dist. Ross No. 11CA3277, 2012-Ohio-2464, ¶

12; *Grimes v. Grimes*, 4th Dist. Washington No. 08CA35, 2009-Ohio-3126, ¶ 16.

{¶19}  Summary judgment is appropriate only when the following have been established:

(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to

judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and

that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *DIRECTV, Inc. v. Levin*, 128

Ohio St.3d 68, 2010-Ohio-6279, 941 N.E.2d 1187, ¶ 15. In ruling on a motion for summary

judgment, the court must construe the record and all inferences therefrom in the nonmoving

party's favor.  Civ.R. 56(C). The party moving for summary judgment bears the initial burden to

demonstrate that no genuine issues of material fact exist and that they are entitled to judgment in

their favor as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264

(1996). To meet its burden, the moving party must specifically refer to "the pleadings,

depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence,

and written stipulations of fact, if any, timely filed in the action," that affirmatively demonstrate

that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R.

56(C); *Dresher* at 293. Moreover, the trial court may consider evidence not expressly mentioned

in Civ.R. 56(C) if such evidence is incorporated by reference in a properly framed affidavit

pursuant to Civ.R. 56(E). *Discover Bank v. Combs*, 4th Dist. Pickaway No. 11CA25, 2012-Ohio-

3150, ¶ 17; *Wagner v. Young*, 4th Dist. Athens No. CA1435, 1990 WL 119247, *4 (Aug. 8,

1990). Once that burden is met, the nonmoving party then has a reciprocal burden to set forth

specific facts to show that there is a genuine issue for trial. *Dresher* at 293; Civ.R. 56(E).

{¶20} We further note that appellate courts apply a de novo standard of review to an

appeal from a summary judgment based on the interpretation of an insurance contract. *Westfield*

*Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, 948 N.E2d 931, ¶ 12; *see also Willis v.*

*Gall*, 2015-Ohio-1696, 31 N.E.3d 678, ¶ 10 (4th Dist.) ("The interpretation of a written contract,

such as an insurance policy, is a matter of law that we review de novo.").

{¶21} "The fundamental goal when interpreting an insurance policy is to ascertain the

intent of the parties from a reading of the policy in its entirety and to settle upon a reasonable

interpretation of any disputed terms in a manner designed to give the contract its intended

effect." *Laboy v. Grange Indemn. Ins. Co.*, 144 Ohio St.3d 234, 2015-Ohio-3308, 41 N.E.3d

1224, ¶ 8. In the absence of an express contractual definition or resultant manifest absurdity, we

will construe words and phrases contained in an insurance policy in accordance with their plain

and ordinary meaning. *Id.*, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374

N.E.2d 146 (1978), paragraph two of the syllabus.

{¶22} If an insurance contract is plain and unambiguous, the court does not go beyond

the plain language of the policy to determine the parties' rights and obligations; instead, it gives

effect to these plain and unambiguous terms. *See Scarberry v. W. Res. Group*, 4th Dist. Highland

No. 14CA6, 2015-Ohio-240, ¶ 11, and cases cited therein.

{¶23} Conversely, if provisions in an insurance contract are ambiguous, i.e., reasonably

susceptible of more than one interpretation, they will be construed liberally in favor of the

insured. *Laboy* at ¶ 9. This rule, however, will not be applied to create an unreasonable

interpretation of the policy provisions. *Id.* With these principles guiding our analysis, we now address the merits of CMH's first assignment of error.

## B. Duty to Defend-General Principles

{¶24}   As the Ohio Supreme Court recently reiterated, "[t]he duty of an insurer to defend an insured is a broad duty—broader than the duty to indemnify—that is absolute when the complaint contains any allegation that could arguably be covered by the insurance policy." *Granger v. Auto-Owners Ins.*, 144 Ohio St.3d 57, 2015-Ohio-3279, 40 N.E.3d 1110, ¶ 21, citing *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 13. "An exception to the absolute duty exists when all the claims are each clearly and indisputably outside the coverage." *Id*.  "Another way of stating the exception is that the insurer need not provide a defense if there is no set of facts alleged in the complaint that, if proved true, would invoke coverage for any claim." *Id.*, citing *Cincinnati Indemn. Co. v. Martin*, 85 Ohio St.3d 604, 605, 710 N.E.2d 677 (1999). Thus, if there is no possibility of coverage under the Policy, then Lightning Rod will have no duty to defend Bob's against the claims asserted by CMH in the underlying lawsuit and arbitration proceedings.

## C. Timing of Property Damage

{¶25}   While Lightning Rod and CMH assert various arguments why coverage under the Policy does or does not exist as a matter of law – including conflicting assertions regarding the applicability of certain exclusions, and whether Bob's was intended to be the named insured – at the heart of the cross-motions for summary judgment and this appeal is the issue of whether property damage that first occurs prior to the policy period, and continues or reoccurs into the policy period, is sufficient to trigger coverage. Under the Policy, as stated above, Lightning Rod

agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and imposed on it "the right and duty to defend the insured against any 'suit' seeking those damages." Moreover, the Policy applied to "property damage" only if it was (1) caused by an "occurrence"; (2) happened during the policy period; and (3) prior to the policy period, no insured or employee of the insured, knew that the property damage had occurred, in whole or in part. It is the second element– the existence of property damage during the policy period – that is determinative of this appeal.

{¶26}  Although it is undisputed that the home was installed and property damage first occurred well before the effective date of the Policy, CMH contends that coverage under the Policy was nevertheless "triggered" by the reoccurrence of property damage during the policy period. CMH labels this the "continuous trigger" theory, and argues that in cases involving property damage of a continuing nature, all policies in effect from when damage first appears until it terminates are "triggered". CMH then argues that because the summary judgment evidence unequivocally shows that property damage to the Beattie home occurred or reoccurred during the policy period, the Policy was "triggered" and coverage exists.

{¶27}  Lightning Rod, on the other hand, argues that because the property damage first manifested itself before the effective date of the Policy, coverage does not exist under the Policy. According to Lightning Rod: "The key inquiry regarding trigger * * * is whether the loss or property damage first 'occurred during the policy period.' The inquiry is not 'how long the property damages persist' or 'how long it takes to repair the damage,' as CMH is contending." [Lightning Rod's Appellate Brief at 19.]

{¶28} "To begin, there are several theories for determining when coverage under an occurrence-based liability insurance policy[4] is 'triggered.' " *Westfield Ins. Co. v. Milwaukee Ins. Co.*, 12th Dist. Butler No. CA2004-12-298, 2005-Ohio-4746, ¶ 10. "If coverage is triggered when property damage becomes known to the owner, the trigger-theory of coverage is often referred to as the 'manifestation trigger.' " *Id*. "If coverage is triggered when the damage first occurs, the trigger is known as the 'injury-in-fact' trigger." *Id*. "The 'exposure trigger' theory is used if coverage is triggered when the first injury-causing conditions occur." *Id*. "If the coverage of multiple policies in effect over a period of time is triggered, the term 'continuous trigger' or 'continuous injury trigger', or 'triple trigger theory' is often used." *Id*., citing *Owens-Corning Fiberglas Corp. v. Am. Centennial Ins.*, 74 Ohio Misc.2d 183, 660 N.E.2d 770 (C.P.1995); *GenCorp, Inc. v. AIU Ins. Co.*, 104 F.Supp.2d 740 (N.D.Ohio 2000); *Dow Chem. Co. v. Associated Indemn. Corp.*, 724 F.Supp. 474 (E.D.Mich. 1989).

{¶29} Recently, the Tenth District Court of Appeals was asked to interpret a coverage provision identical to the provision in the case sub judice. *See Hastings Mut. Ins. Co.*, 2014-Ohio-2916, at ¶¶ 16-17. In *Hastings*, two homeowners separately entered into a real estate construction and sales contract with one appellant in 2006 for the construction, purchase, and sale of a home. *Id*. at ¶ 2. Another appellant provided the homeowners a limited warranty for each home. *Id*. Subsequent to taking occupancy of the homes, in late 2006, both homeowners discovered water infiltration and related problems in the basement of their homes. *Id*. at ¶¶ 2, 18. The homeowners timely reported those issues to the appellants but the appellants repair efforts were unsuccessful. *Id*. at ¶¶ 2, 18. The basement water problems continued unabated for several years. *Id*. at ¶ 19. On or around March 1, 2010, the appellant that provided the limited warranties

---

[4] An insurance policy is occurrence-based when coverage is limited to property damages occurring within the policy period. *Reynolds v. Celina Mut. Ins. Co.*, 9th Dist. Lorain No. 98CA007268, 2000 WL 202107, *3 (Feb. 16, 2000).

obtained two liability insurance policies from Hastings Mutual Insurance Company ("Hastings"). *Id*. at ¶ 3. Sometime after the insurance policies became effective, the two homeowners filed lawsuits against the appellants alleging various causes of action. *Id*. at ¶ 2. Given the similarity of the underlying complaints, the trial court consolidated them into a single action. *Id*. After the underlying complaints were instituted, the appellants provided Hastings with notice of the suit. *Id*. at ¶ 4. Hastings assumed a defense of the underlying complaints subject to a reservation of rights. *Id*. Thereafter, Hastings filed a complaint seeking a declaratory judgment asserting that the claims raised in the underlying complaints either did not give rise to coverage or were otherwise excluded from coverage. *Id*. at ¶ 5. A few months later Hastings moved for summary judgment on all claims raised in its declaratory judgment action. *Id*. Ultimately, the trial court granted Hastings motion for summary judgment concluding, inter alia, that all the claims occurred and were known to appellants prior to the policy dates and thus were not covered under the policies. *Id*. at ¶ 6.

{¶30} On appeal, the appellants argued that the trial court erred in determining the claims were excluded from coverage under the policies because they occurred prior to the effective dates of the policies. *Id*. at ¶¶ 7, 10. In interpreting the coverage provision[5] of the insurance policies, the appellate court concluded that "there is no ambiguity in the language of the policies and that, based on the plain language, there will be no coverage when the damage that occurred during the policy period is a continuation of damage that occurred prior to the policy period." *Id*. at ¶ 17. The appellate court also rejected the appellants' argument that "it [was] enough that some harm occurred during the policy period to invoke coverage regardless of

---

[5] We reiterate that the coverage provision of the policies at issue in *Hastings*, labeled by that court as the loss in progress provision, is identical to the coverage provision of the Policy at issue in this appeal.

whether that harm is a continuation of harm that occurred outside the policy period." *See id*. at ¶ 20. Specifically, the appellate court held:

> * * * This interpretation, however, defies the plain language of the policies. We are mindful that in examining the underlying complaint, we must not stretch the allegations beyond reason to impose a duty on the insurer. To do so would effectively impose an absolute duty upon the insurer to provide a defense to the insured regardless of the cause of action stated in the complaint.
>
> Here, it is undisputed that the damage alleged in the underlying complaint began before the policy period and appellants knew of the damage before the policy period. Based on the plain language of the policies, these claims do not fall within policy coverage, as the policies make it clear that a continuation or resumption of this same damage is not sufficient to bring the claims within policy coverage.

(Quotations omitted.) *Id*. at ¶¶ 20-21. Thus, the appellate court determined that the trial court did not err in concluding that Hastings had no duty to defend the underlying complaints where all the alleged claims were indisputably excluded from the policy coverage. *Id*. at ¶ 21.

{¶31} Other Ohio appellate courts, construing similar coverage provisions, have likewise concluded that a continuation or resumption of property damage that first manifested prior to the policy period was insufficient to bring claims within policy coverage. *See Ohio Cas. Ins. Co.*, 2014-Ohio-4523, at ¶ 20 (construing "loss in progress" clause to mean that even if a court were to find each damage claim of a failing hush tube to be a separate occurrence, where the damages all arose from the initial use of a defective resin by the plumbing parts manufacturer

and the plumping parts manufacturer knew prior to purchasing the insurance policies that the hush tubes were failing, then the failing of the hush tubes during the policy period "is a continuation of property damage and is excluded by the loss in progress provision"); *Cleveland Bd. of Edn. v. R.J. Stickle Internatl.*, 76 Ohio App.3d 432, 437, 602 N.E.2d 353 (8th Dist.1991) (holding that in a situation where damage manifests itself immediately and continues unabated into a successive carrier's coverage period, all insurers subsequent to the date the damage first manifested are absolved of any liability).

{¶32}   While we are not bound by the opinions of our sister districts, in this instance we find the *Hastings* decision to be particularly persuasive given the similarity of facts and the exactness of the insurance policy provisions at issue. Therefore, adopting the rationale of the *Hastings* opinion, we likewise conclude that there exists no ambiguity in the Policy language; and that based on the plain language of the Policy, coverage does not exist when the damage that occurred during the policy period was a continuation of damage that first manifested prior to the policy period.

{¶33}   CMH has not cited, nor could the undersigned find, any Fourth District cases that have adopted the "continuous trigger" theory in an analogous situation. Moreover, the cases cited by CMH in support of the "continuous trigger" theory of coverage are distinguishable from the case sub judice. Specifically, those cases stand for the proposition that the "continuous trigger" theory applies to trigger coverage issued *prior to* the date of discovery or manifestation of the property damage. *See Westfield Ins. Co.*, 2005-Ohio-4746; *Plum v. W. Am. Ins. Co.*, 1st Dist. Hamilton No. C-050115, 2006-Ohio-452. In the case sub judice, the Policy was issued *after* the property damages were discovered. The *Plum* court even notes that the "timing of the manifestation * * * is important" and concedes that the determination of which trigger theory

applies "depends on the nature of the damage", especially whether "the damage manifested itself before the policy was in effect", or "long afterward". *Plum* at ¶ 19. The third case cited by CMH involved a scenario where the property damage first occurred during the insurer's policy period. *See Polk v. Landings of Walden Condominium Assn.*, 11th Dist. Portage No. 2004-P-0075, 2005-Ohio-4042, ¶ 90 ("Again, water intrusions occurred and mold was detected in [the insured's] unit during [the insurer's] policy periods. Coverage is triggered so long as property damage occurs during the policy period."). The fourth and final case cited by CMH in its brief involved environmental contamination at several sites resulting from the insured's long-term disposal of industrial wastes, and is factually distinguishable from the case sub judice. *See GenCorp., Inc.*, 104 F.Supp.2d 740 at 748 (noting that the continuous trigger rule has origins in asbestosis cases and that "[i]n the great majority of property damage cases * * * the continuous trigger rule [would] not be appropriate"). In short, we decline to adopt the "continuous trigger" theory under the particular facts and circumstances of this case. Rather, we find that the line of reasoning stated in *Hastings* presents the better approach to this case.

{¶34}  Here, the relevant facts of the case are undisputed and the parties agree that the damages alleged in the Beattie lawsuit began before the policy period. Based on the plain language of the Policy, these claims do not fall within Policy coverage. Stated differently, a continuation or resumption of the same damages is not sufficient to bring the claims within Policy coverage. *See Hastings* at ¶¶ 20-21. Accordingly, the trial court did not err in concluding that Lightning Rod had no duty to defend or indemnify Southworth or Bob's against the claims asserted by CMH.

{¶35}  Because our conclusion that coverage did not exist under the plain language of the Policy is determinative of CMH's first assignment of error, we need not address the remaining

issues raised by CMH. Any opinion expressed on the remaining issues "would be merely advisory and not in accordance with the long-standing practice of courts to decline to render advisory opinions." *Allen v. Totes/Isotoner Corp.,* 123 Ohio St.3d 216, 2009–Ohio–4231, 915 N.E.2d 622, ¶ 9 (O'Donnell, J., concurring). Accordingly, we overrule CMH's first assignment of error.

## D. CMH's Second Assignment of Error is Moot

{¶36}   Our resolution of CMH's first assignment of error is dispositive, and renders moot CMH's second assignment of error. Hence, we need not address the second assignment of error. *See* App.R. 12(A)(1)(c).

## IV. Conclusion

{¶37}   Based on the foregoing, we conclude that the trial court did not err in granting Lightning Rod's motion for summary judgment or in denying CMH's cross-motion for summary judgment. Having overruled CMH's first assignment of error and rendering moot its remaining assignment of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.: Concurs in Judgment and Opinion.
McFarland, J.: Concurs in Judgment Only.

For the Court

BY:  _____
           Marie Hoover, Judge

<strong>NOTICE TO COUNSEL</strong>

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**